637 P.2d 753

**Ray C. SKELTON, Stanley Hodges, James D. Wright, Drexel Pope, as Trustees of The Word Chapel, Plaintiffs-Appellants,**

v.

**The WORD CHAPEL, INC., an Arizona corporation, Defendant-Appellee.**

**1 CA–CIV 4701.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 6, 1981.

Rehearing Denied Nov. 16, 1981.

Review Denied Dec. 7, 1981.

544

Otto H. Linsenmeyer, Phoenix, for plaintiffs-appellants.

Jeffrey M. Proper, Phoenix, for defendant-appellee.

OPINION

EUBANK, Judge.

This appeal arose from two cases initiated in the superior court: an action to quiet title and an action in forcible entry and detainer. The subject property is a church located in Glendale, Arizona, known as The Word Chapel. The parties to this appeal represent divergent factions of a once unified congregation, and both factions claim fee title to the church property and facilities located thereon.

The quiet title action was tried by a judge sitting without a jury, the forcible entry action having been consolidated for discovery purposes. Following the trial, the trial judge made extensive findings of fact and conclusions of law, and entered his judgment quieting title in the defendant-appellee, The Word Chapel, Inc. Because we find that the trial judge correctly applied the law in this matter, we affirm his judgment quieting title in the defendant-appellee, and direct that the forcible entry action be dismissed by the trial court.

The essential facts are that, in 1965, five individuals, Drexel Pope, Ray Skelton, Silas Abbot, Jesse Mendenhall and Oscar Riegel, formed an independent, unincorporated religious association. They purchased property, constructed a church facility thereon and dedicated it. The church is known as The Word Chapel. The deed to the subject property recited that the five men above named, or their successors, took title to the property "as trustees for The Word Chapel, a religious body." The five men also deemed themselves the self-appointed Elders of this body, and conducted church business much like any board of directors. The Elders posted their decisions on the church bulletin board for approval by the congregation, and unanimous assent was virtually assured since only the Elders and their immediate families were, for the most part, members.

From its inception, The Word Chapel was an informal congregation. They were an independent body in that they answered to no higher ecclesiastical authority, and

preaching was in an open pulpit atmosphere. Membership was gained by attendance alone. Nevertheless, in order to acquire federal tax exemption status, the Elders did draw up Articles of Association and Bylaws, and by filing the appropriate documents with the Internal Revenue Service, became a duly recognized tax exempt religious organization.

In 1972, Drexel Pope, an Elder, had occasion to meet Dr. Dino E. Badaracco and his wife, founders of the Redeemer Missionary Training College. Because of an apparent agreement of religious belief, Mr. Pope invited the Doctor to join The Word Chapel. Plans were made whereby The Word Chapel would adopt the Redeemer College, and construct a new facility for use by the Doctor and his students. The Elders unanimously agreed on this project, and the matter came before the congregation where assent was obtained. Construction financing was arranged by Drexel Pope and Silas Abbot, both Elders, through Transamerica Title. Pope and Abbot loaned a total of $20,000 to The Word Chapel, and retained a mortgage on the church property pursuant to Transamerica's arrangements. Dr. Badaracco's students assisted fully in the construction of the new building, and saw the project through to completion.

During construction, Dr. Badaracco assumed an ever-increasing role in the affairs of The Word Chapel. He and his students evangelized throughout the community, and succeeded in increasing the Chapel's membership three-fold. Although never formally indoctrinated, he was treated as an Elder, and acted as one. As he became more influential, some of his policies began to concern the other Elders. When the rift matured into an outright dispute, the founding Elders sought legal assistance in ejecting Dr. Badaracco and his students from the church property.

One of the founding Elders, Silas Abbot, strongly disagreed with the use of courts in resolving religious disputes. On March 5, 1974, he called a meeting in The Word Chapel, but most of those attending were the supporters of Dr. Badaracco. From

that meeting forward, the dispute became extremely bitter and finally, the supporters of Dr. Badaracco voted to remove three of the Elders, Pope, Skelton and Hodges, from the ranks of The Word Chapel. This action was approved by a majority of those then attending The Word Chapel as regular members.

New trustees were appointed to fill the vacancies created, and Dr. Badaracco thereafter incorporated The Word Chapel under the laws of this state. The new trustees, acting as successors to the founding Elders, conveyed the church premises to the new corporation. Mortgage payments were regularly made, but on advice of counsel, Pope and Abbot eventually began to refuse these payments. The payments remained in the hands of Transamerica, which interpleaded the funds into the superior court. Transamerica was discharged, and the parties in interest proceeded to prosecute the instant quiet title action.

■ In determining title to religious property, courts are constrained, by the First Amendment to the United States Constitution, in their analysis from inquiring into the motives and moral considerations of the conflicting factions; they will not resolve ecclesiastical questions, nor quiet title on the basis of doctrine. *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952). Instead, courts should resolve these disputes on "neutral principles of law." *Presbyterian Church v. Hull Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969).

Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions.

*Id.* at 449, 21 L.Ed.2d at 665, 89 S.Ct. at 606.

■ Legal title to church property, as in the instant case, is often held in trust. Three basic forms of these trusts were described in *Watson v. Jones*, 13 Wall. 679, 722, 80 U.S. 679, 722, 20 L.Ed. 666, 674 (1872) as follows: 1) Property held in express trust for support of some specific doc-

trine or belief; 2) Property held in trust for a religious congregation of independent nature; and 3) Property held in trust by a local body for a hierarchical ecclesiastical authority. In resolving a title dispute, a reviewing court must, therefore, inquire into which type of trust is involved in the particular case before it can enforce it.

As noted previously, the instrument creating the trust herein was a deed. The five individuals were named as Trustees, holding the *res*, church real property, for the benefit of "The Word Chapel, a religious body." At first instance, it may appear that this instrument created an express trust for support of some specific doctrine, and would fall into category (1) above-mentioned. Appellants so argue, but we disagree.

Quieting title in appellants' names under this theory would require an examination into religious doctrine of The Word Chapel, and a determination of who the real *cestui qui trust* is according to their current beliefs. We realize that exactly such an approach was taken in the early Arizona case of *Britton v. Jackson*, 31 Ariz. 97, 250 P. 763 (1926), a case relied upon by appellants. But such an approach was also expressly declared unconstitutional by the United States Supreme Court in *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449–50, 89 S.Ct. 601, 606–07, 21 L.Ed.2d 658, 665–66 (1969).

■ Because of the *Presbyterian* case, we must conclude that *Britton v. Jackson, supra*, is no longer the law of Arizona. Further, we hold that any express trust, sought to be enforced in favor of some specific doctrine or belief, must be written so that the court can enforce it on purely secular terms. *See Presbyterian Church, supra*, at 452, 89 S.Ct. at 607–08, 21 L.Ed.2d at 667 (Harlan, J., concurring).

Having determined that the appellants may not rely on the trust for their personal benefit, we turn our inquiry to the remaining forms of trust listed in *Watson v. Jones, supra*. There is no dispute herein that category (3) is inapplicable. The Word Chapel is completely independent, and answers to

no higher ecclesiastical authority. Therefore, we may dismiss this type of trust, along with the analysis involved therein. *See Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).

Finally, we examine category (2), property held in trust for a religious congregation of independent nature. The trial judge found that The Word Chapel was, in fact, a congregational church, and based his ruling accordingly. This finding of fact is hotly disputed on appeal because, in a congregational church, the numerical majority is the supreme authority. *Bouldin v. Alexander*, 15 Wall. 131, 140, 82 U.S. 131, 140, 21 L.Ed. 69, 72 (1872). The trial judge's finding, therefore, defeats the rights of appellants to the church property.

■ In determining the nature of any religious body, a court is again constrained by the First Amendment from "establishing" any particular type of religion. *See Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952). A court must base its finding on objective, secular criteria only. We turn, then, to the evidence before the trial court.

■ The Articles of Association and By-laws of The Word Chapel were introduced by appellees and admitted into evidence. A reading of these documents shows a clear intent to create a congregational organization by the drafter. Appellants argue that these charters were never followed. The record shows that they were the only charters ever adopted by The Word Chapel, and as such were properly considered by the court in determining the nature of the organization. Additionally, the evidence as to the adherence to the Articles and Bylaws is in conflict in the record. For example, they were used to obtain tax exemption status for the church. Furthermore, the record shows that The Word Chapel was conducted as a congregational church. Based on this evidence, we cannot conclude that the trial judge was erroneous in his determination that The Word Chapel was and is a congregational body. Nor can we disagree with his finding that a majority of The Word

Chapel congregation participated in the removal of the appellants as trustees. On conflicting testimony, the judge found that the trustees were duly removed and duly replaced by the congregation. Having had an opportunity to weigh the evidence, and having based his conclusion on credible evidence, the findings of the trial judge will not be reversed on review. *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979).

As their final argument, appellants contend that appointment of new trustees without approval of the superior court was improper. There is no merit in this argument, because the appointment of new trustees was approved by the superior court in this very case. Appellants also cite A.R.S. § 10–427.[1] However, we are unable to ascertain how this statute is beneficial to appellants' cause. Since the trial court approved the appointment of the new trustees, A.R.S. § 10–427 was complied with.

Upon our review of Supreme Court precedent in this area, we find that the trial judge correctly applied the law as to the facts of this case. *See Paradise Hills Church, Inc. v. International Church of Foursquare Gospel*, 467 F.Supp. 357 (D.Ariz. 1979). We further find that he was within his jurisdiction in upholding the actions of this religious body according to the Articles of Association and Bylaws of the church. *Konkel v. Metropolitan Baptist Church, Inc.*, 117 Ariz. 271, 572 P.2d 99 (App.1977).

The judgment quieting title in The Word Chapel, Inc., a religious corporation, is affirmed. This matter is remanded to the trial court with direction to dismiss the forcible entry and detainer action which is still pending.

JACOBSON, P. J., and HAIRE, J., concur.

---

1. § 10–427. Succession of title to religious property held by person not incorporated as corporation sole

   In case of the death, resignation or removal of a person who, at the time of his death, resignation or removal, was holding the title to property for the use or benefit of any church or religious society not incorporated as a corporation sole, the title to such property held by him shall not revert to the donor, nor vest in the heirs of the deceased person, but shall be deemed to be in abeyance after the death, resignation or removal until his successor is duly appointed to fill the vacancy. Upon appointment of a successor, the title to all property held by his predecessor shall at once, without any other act or deed, vest in the person appointed to fill the vacancy.