101 N.J. Super. 354 (1968)
244 A.2d 339
EDWARD FABER, PLAINTIFF,
v.
THE EDGEWATER NATIONAL BANK OF EDGEWATER, N.J., A NATIONAL BANKING ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued May 16, 1968.
Decided May 28, 1968.
*356 Mr. Maurice C. Brigadier for Plaintiff.
Mr. Milton T. Lasher for the Defendant.
SCHNEIDERMAN, J.C.C.
Plaintiff, Edward Faber, has moved for Summary Judgment against the defendant, The Edgewater National Bank of Edgewater, N.J., a national banking association, on the First Count of the Amended Complaint. In this Count recovery is sought for items improperly charged against the plaintiff's "Berkeley Arms" checking account with the defendant. The pertinent facts at issue have been stipulated by both sides.
On March 8, 1963 plaintiff, Edward Faber, became the owner of a Leasehold of an apartment house designated as "The Berkeley Arms" and located at 208 Anderson Street, in the City of Hackensack, County of Bergen, State of New Jersey.
On January 15, 1964, the plaintiff entered into a management agreement with one Martin Goldstein under which the plaintiff employed the said Martin Goldstein as his agent to lease, operate and manage the aforesaid property. By said agreement the plaintiff agreed with Martin Goldstein that the monies collected by him as agent from the rentals paid by the tenants in said premises should be deposited in a bank account in the Edgewater National Bank, the defendant herein. Said account was to be opened by the plaintiff and all withdrawals therefrom were to be by check containing two signatures, the signature of Sylvia Faber, the wife of the plaintiff, and the signature of either Martin Goldstein or his employee, Frederick Miller.
*357 Thereupon, on February 3, 1964, the plaintiff did open an account in the Edgewater National Bank in the name of "Berkeley Arms Apartments". On the signature card it was set forth that in the payment of funds or the transaction of any other business on the said account the signatures required on all checks or other instruments to be charged against said account should be that of Sylvia Faber, the wife of the plaintiff, and the signature of Martin Goldstein or his employee, Frederick Miller. The contract of banking between the plaintiff, as depositor, and the defendant, as the bank repository, provided that the defendant could charge against the aforesaid account of the plaintiff only such items as were drawn against the account of the plaintiff in the name of "Berkeley Arms Apartments" and which bore the aforementioned signatures.
Thereafter, commencing with February 3, 1964 and continuing through October 30, 1964, Martin Goldstein collected from the tenants of the plaintiff substantial sums of money and said funds were deposited by Martin Goldstein in the Berkeley Arms account. Total collections amounted to $179,909.16 for that period. However, the total deposits to the Berkeley Arms checking account made by Martin Goldstein during the same period amounted to $236,915.36. Throughout this period, February 3, 1964 through October 30, 1964, the monthly bank statements were delivered by the defendant herein to Martin Goldstein pursuant to plaintiff's instructions to the bank. Plaintiff never examined the statements over this nine month period.
Some time after November 1964, the plaintiff obtained possession of the bank statements and the items charged against the Berkeley Arms account which had been returned with said statements. Thereupon the plaintiff learned that the defendant, in breach of its banking contract with the plaintiff, had charged against the aforesaid account of the plaintiff between February 3, 1964 and October 30, 1964, items totaling $56,098.97. These items were not drawn upon the Berkeley Arms account but were, in point of fact, drawn *358 upon other accounts belonging to Martin Goldstein, individually, or other organizations owned, managed, or controlled by the said Martin Goldstein, with which the plaintiff had no connection whatsoever and for the payment of which no authorization had ever been given by the plaintiff to the defendant. (emphasis mine) Included among these items was a Promissory Note which was in no way chargeable against the account of the plaintiff.
On December 15, 1964, and on several occasions thereafter, plaintiff furnished the defendant with a list of items which had been wrongfully charged by the defendant against the aforesaid account of the plaintiff. The items so improperly charged, 102 in all, against the account of the plaintiff amounted to $56,098.97, none of which purports to have been drawn against plaintiff's account. The defendant has failed and refused to pay the same. They were all drawn against other accounts of Goldstein and charged to the plaintiff.
On November 12, 1965 the present suit was commenced against the defendant, The Edgewater National Bank of Edgewater, N.J., a national banking association. The whereabouts of Martin Goldstein are unknown. On the basis of the foregoing facts the plaintiff contends he is entitled to Judgment as a matter of law.
For the purposes of this motion it should be noted that the movant has the burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact. R.R. 4:58-3. All inferences of doubt are drawn against the movant in favor of the opponent and the papers supporting the motion are closely scrutinized and opposing papers indulgently treated. Such relief is to be granted with much caution. Judson v. Peoples Bank & Trust Co., of Westfield 17 N.J. 67 (1954); United Stations of N.J. et al., v. Wm. Kingsley et al., 99 N.J. Super. 574, 581 (Ch. Div. 1968).
At the outset it should be noted that I am of the opinion that this is a case of novel impression not only in this State, *359 but throughout the entire country. The Court in its research has been unable to find any case law where a bank acted in the manner in which the facts present themselves at bar.
The main issue for consideration is whether the plaintiff is relieved from exercising due diligence in examining the bank statements and cancelled checks for the period from February 3, 1964 to October 30, 1964 based on the facts in this case.
The defendant in his Brief raises two points, (1) the plaintiff suffered no loss and therefore has no claim to relief; (2) the plaintiff owed a duty to the defendant to examine his account with reasonable dispatch and that he failed to discharge this duty. I will consider the second point first.
It should be noted at the outset that the provisions of the Uniform Commercial Code contained in N.J.S. 12A:4-406 have no application to the instant case. This section deals exclusively with the subject of the forgery or unauthorized signature of the drawer or endorser upon checks and other instruments chargeable to the account of a depositor as well as the alteration of such instrument. (emphasis mine). As previously stated, the duties imposed by the Uniform Commercial Code as to the bank and its customer, and the time limitation with respect to suit, apply only to forgery, unauthorized signature or alteration. There is no provision in the Code dealing with the duty of the customer or the bank with respect to items charged against the customer's account that do not purport to be drawn against said account.
Furthermore, sub-section 4-406(3) makes the rules regarding due diligence inoperative if the bank, itself, has been negligent. In other words, a negligent bank cannot put the loss resulting from a forgery or the like onto the customer on the ground that the customer also has been negligent. N.J.S. 12A:4-406 N.J. Study Comment (3).
*360 However, provision is made in the Banking Act of 1948 as amended by the Laws of 1951, Chapter 166, namely, N.J.S. 17:9A-229.5. This Statute requires that:
Nothing in this act shall relieve a depositor from the duty of exercising due diligence in the examination of an accounting, and the vouchers, if any, accompanying it, or from the duty of diligence of notifying the banking institution of any error or irregularity therein, or from the legal consequences of any neglect of any such duty; nor shall anything in this act modify or affect the provisions of sections 226 and 227 of the act to which this act is a supplement, or revive or renew any cause of action or right or claim otherwise barred by law.
The defendant cites several New Jersey cases in his brief for the proposition that due diligence is a question dependent upon the facts in each case. Housing Authority of Union City v. Commonwealth Trust Co., 25 N.J. 330 (1957); Rainbow Inn, Inc. v. Clayton National Bank, 86 N.J. Super 13 (App. Div. 1964). It is defendant's contention that a depositor cannot ignore the discrepancies in his account as long as he ultimately discovers them within the statutory deadline as prescribed in the Banking Act. See N.J.S. 17:9A-229.1 to 4.
While it is true that both of the aforementioned cases deal with forgeries rather than checks drawn on another's account this factual difference does not alter or detract from the basic legal principles expressed in Pannonia B & L Asso. v. West Side Trust Company, 93 N.J.L. 377.
"A bank depositor, on receiving from the bank a statement of his account, owes to the bank a duty to examine the account with reasonable dispatch and with reasonable care, and to inform the bank of any errors discovered therein." Forbes v. First Camden Nat. Bank and Trust Co., 25 N.J. Super. 17, 23 (App. Div. 1953).
The depositor is not excused from the discharge of that duty by entrusting its performance to an incompetent or dishonest agent, in the absence of at least reasonable diligence in supervising the conduct of the authorized agent. In accord *361 with the rule in Pannonia, see Clarke v. Camden Trust Co., 84 N.J. Super 304, 311-312 (Law Div. 1964).
The rule in Pannonia has been followed in numerous jurisdictions. See Rainbow Inn, Inc., 86 N.J. Super., supra, at p. 26. The rule is well summed up in Screenland Magazine v. National City Bank, 181 Misc. 454, 42 N.Y.S.2d 286, 289 (Sup. Ct. 1943), wherein the Court said:
"A depositor cannot be charged with the knowledge which the dishonest employee has gained while he was stealing from him * * * but a depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements, vouchers and certificates would have disclosed had it been made by a person on the depositor's behalf who had not participated in the forgeries."
Therefore it is my opinion that Goldstein may be considered the agent of the plaintiff in fulfilling the plaintiff's duty to examine the returned bank statements and cancelled checks to discover any irregularities therein. However, a resolution of this question is properly one to be submitted to a Jury.
In Duralite Co., Inc. v. New Jersey Bank and Trust Company, 97 N.J. Super 48 (App. Div. 1967), the depositor sued the bank for monies charged against the plaintiff's account upon forged checks purported to have been drawn against the plaintiff's account. The Appellate Division in the opinion of Judge Gaulkin held, notwithstanding the provisions of the Uniform Commercial Code contained in N.J.S. 12A:4-406 with respect to the time periods for suing the bank on such items, that the provisions of N.J.S. 17:9A-229.1 to 229.4 were still effective, had not been repealed and still applied. The effect of the aforementioned sections upon the contract of banking between the plaintiff depositor and the defendant bank is to render the accounting by the bank conclusive against the depositor unless, (1) the depositor notifies the bank within six years that it questions the correctness of the accounting, and (2) institutes his action to *362 challenge the correctness of the accounting within one year after written notice has been served by the bank.
The facts in Duralite amounted to a depositor giving timely notice to the bank within the purview of N.J.S. 12A: 4-406. However, in that case the notice given to the bank did not result in the commencement of suit for more than a year. The Court stated "It may be incongruous that a depositor who gives early notice in writing may be barred by 229.3 long before the depositor who delays giving written notice, but the remedy for this incongruity and for the trap mentioned above must be provided by the Legislature." Consequently, the decision of the Court amounted to an enforcement of the provisions of the Banking Act as well as the requirements contained in the Uniform Commercial Code. The Court felt that the Banking Act may thus be a trap for the unwary who may rely only on the Code, but the Court refused to overturn the clear legislative pronouncement on the matter. Cf. Housing Authority of Union City v. Commonwealth Trust Co., 25 N.J. 330 (1957).
In the instant case the plaintiff contends that the defendant bank was not merely negligent, but was guilty of an active wrongdoing by way of breach of contract, since it knowingly charged the account of the plaintiff with items on a number of occasions which did not even purport to be drawn upon the plaintiff's account. The plaintiff urges that a construction of the Banking Act, N.J.S. 17:9A-229.5, which would require notification to a knowing wrong-doer that he is committing a deliberate, intentional breach of contract would produce a reductio absurdum. With this the Court cannot agree, the Court being of the opinion that the matter of exercising due diligence is a factual question which must be submitted to a Jury.
In regards to the first defense that the plaintiff has suffered no loss, this Court is of the opinion that the plaintiff would probably be entitled to nominal damages at the very least and, therefore, this defense would not be available to the bank. Furthermore, the bank deprived the plaintiff of *363 the opportunity to prove any actual damages when they made payment on the checks in issue and did not file an interpleader. However, a full determination of this issue is not required for the adjudication of plaintiff's Motion.
Accordingly, Summary Judgment in this matter is denied.