628 P.2d 44

**K & K MANUFACTURING, INC., a corporation, and Bill J. Knight, Plaintiffs/Appellants,**

v.

**UNION BANK, a corporation, Defendant/Appellee.**

No. 2 CA–CIV 3735.

Court of Appeals of Arizona, Division 2.

Feb. 5, 1981.

Rehearing Denied March 24, 1981.

Review Denied April 14, 1981.

Lesher, Kimble & Rucker, P. C. by Robert O. Lesher, Tucson, for plaintiffs/appellants.

Moore, Jennings, Kepner, Scheffing & Hart, by Robert O. Dyer, Phoenix, for defendant/appellee.

## OPINION

HATHAWAY, Chief Judge.

In this case we must apply articles three and four of the Uniform Commercial Code to determine who should bear the risk of loss when a dishonest employee forges her employer's name as drawer on a number of checks on his business and personal checking accounts, then appropriates the proceeds for her personal use.

Appellant Bill J. Knight is the president and majority stockholder of both K & K Manufacturing, Inc. and Knight Foundry & Manufacturing, Inc. Knight Foundry employed about 80 people at the time of trial, while K & K Manufacturing, which was formed to accomplish the contracting, buying and selling for the foundry business, employed only two persons when the events which form the basis of this action occurred. These two employees were Knight and a bookkeeper, Eleanor Garza. The bookkeeper's duties at K & K Manufacturing were very broad, including picking up the company mail and Knight's personal mail from a common post office box, preparing checks for Knight's signature to pay both company and personal bills, and making entries in a cash disbursement journal reflecting the expenses for which the checks were written. Most importantly, it was her responsibility to reconcile the monthly statements prepared and sent by

appellee Union Bank, where Knight kept both his business and personal checking and savings accounts. No one shared these duties with Miss Garza.

Between March 1977 and January 1978, Miss Garza forged Knight's signature on some 66 separate checks drawn on his personal or business accounts at Union Bank. The majority of these checks were made payable to her. The total amount of the forgeries on the K & K Manufacturing account was $49,859.31. The total on Knight's personal account was $11,350. The bank paid each such check and Miss Garza received or was credited with the proceeds.

We need not concentrate on the details of the fraud, except to comment that it proved to be effective for nearly one year. Miss Garza assured that the disbursement journal balanced by overstating legitimate expenditures, forging checks to herself for the difference, and later showing the forged check as "void." Upon receipt of appellee's monthly statement and cancelled checks, she removed and concealed the bad checks. The proceeds from most of the forgeries were deposited directly into her personal account rather than taken in cash. She usually presented the bad checks to the bank tellers with numerous authorized checks, and spread her banking transactions among several tellers so that no one teller knew the extent of her business.

Eventually, an in-house audit showed the discrepancies in the 1977 disbursements. Appellants brought this action against appellee for breach of contract, seeking repayment of the funds the bank paid out on checks with unauthorized signatures. After a court trial, judgment was entered in favor of appellant Knight for $5,500, representing the amount paid out of his personal account on forged checks from March 28 to May 20, 1977. This figure included eight forged checks paid by the bank prior to the mailing of its monthly statement containing a record of the payments and the checks themselves to Knight on May 6, plus a 14-day period. Since no forged checks on the K & K Manufacturing account were paid prior to May 20, judgment was entered for appellee against it. In addition, the trial court made findings of fact and conclusions of law. Both Knight and K & K Manufacturing have appealed.

Appellants contend that findings 13, 14 and 15 are not supported by the evidence. They argue the record shows their actions were not negligent and that the bank's practices and procedures were negligent as a matter of law. The disputed findings are as follows:

"13. Defendant bank [appellee] paid all the checks in good faith and in accordance with reasonable commercial standards.

14. Defendant bank did not fail to exercise ordinary care in paying the checks.

15. The plaintiffs [appellants] did not exercise reasonable care and promptness to examine the bank statements and cancelled checks in order to discover the forgeries."

Our duty begins and ends with the inquiry of whether the trial court had before it evidence which reasonably supports its actions, viewed in a light most favorable to sustaining its findings. *United Bank v. Mesa N. O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979). We will not weigh conflicting evidence or set aside the trial court's findings unless they are clearly erroneous. *Id.* The determination of which actions are commercially reasonable and what constitutes ordinary care on the part of the bank, as well as reasonable care and promptness on the part of the depositor, are questions of fact for the trier of fact. *See West Penn Administration, Inc. v. Union National Bank*, 233 Pa.Super. 311, 335 A.2d 725 (1975).

The concept of which party bears the loss in a forgery situation such as the one presented here is addressed in articles three and four of the Uniform Commercial Code, covering commercial paper and bank depos-

its and collections.[1]  A.R.S. Sec. 44–2543 [U.C.C. § 3–406] provides:

"Negligence contributing to alteration or unauthorized signature

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

A.R.S. Sec. 44–2632 [U.C.C. § 4–406] provides in part:

"Customer's duty to discover and report unauthorized signature or alteration

A.  When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

B.  If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection A the customer is precluded from asserting against the bank:

1.  His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

2.  An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

C.  The preclusion under subsection B does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s)."

These provisions impose a duty on the depositor to check his monthly statement for unauthorized signatures or alterations on checks.  If the depositor fails to do so, after the first forged check and statement relating thereto is sent to him, plus a reasonable period not exceeding 14 days, he is precluded from asserting the unauthorized signature or alteration against the bank.  U.C.C. Sec. 4–406, comment 3.  The burden of proof of depositor's negligence is on the bank.  Even if the bank succeeds in establishing the depositor's negligence, if the customer establishes that the bank failed to exercise ordinary care in paying the bad checks, the preclusion rule of A.R.S. Sec. 44–2632(B) does not apply.  U.C.C. Sec. 4–406, comment 4.

We first address the issue of whether appellee met its burden of proof of showing that appellants "substantially contributed" to the forgeries or failed to exercise "reasonable care and promptness" in examining the monthly statements.  The record shows that appellants trusted Miss Garza completely with both writing checks and reconciling the monthly statements.  No spot checks were made by Knight or the controller at Knight Foundry, both of whom had access to the banking records.  Knight was informed by a bank officer that his personal account was overdrawn on 12 occasions in 1977, yet did nothing to discover the reasons therefor.  Knight testified he was aware Miss Garza's work was often inaccurate as well as tardy in 1977 and 1978.

Appellants argue they were not negligent in relying on a previously honest employee, citing *Jackson v. First National*

---

1.  Article three has been adopted in Arizona as A.R.S. Secs. 44–2501, et seq., while article four appears as A.R.S. Secs. 44–2601, et seq.

*Bank*, 55 Tenn.App. 545, 403 S.W.2d 109 (1966). We decline to follow *Jackson*, which held, contrary to the bulk of authority, that since a defalcating financial secretary had been a longtime faithful and trusted member of the church he cheated, the church could not be found negligent. Misplaced confidence in an employee will not excuse a depositor from the duty of notifying the bank of alterations on items paid from the depositor's account. *Bank of Thomas County v. Dekle*, 119 Ga.App. 753, 168 S.E.2d 834 (1969); *Westport Bank and Trust Co. v. Lodge*, 164 Conn. 604, 325 A.2d 222 (1973); *Rainbow Inn, Inc. v. Clayton National Bank*, 86 N.J.Super. 13, 205 A.2d 753 (1964); *Kiernan v. Union Bank*, 55 Cal.App.3d 111, 127 Cal.Rptr. 441 (1976). We adopt the majority view that the depositor is chargeable with the knowledge of all facts a reasonable and prudent examination of his bank statement would have disclosed if made by an honest employee. *Pine Bluff National Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253 (1975); *Exchange Bank & Trust Co. v. Kidwell Construction Co.*, 463 S.W.2d 465 (Tex.Civ.App.1971);[2] *Faber v. Edgewater National Bank*, 101 N.J.Super. 354, 244 A.2d 339 (1968); J. White & R. Summers, Uniform Commercial Code, 630 (2nd ed. 1980). The trial court's finding number 15 is amply supported by the evidence.[3]

Secondly, we turn to the question of whether appellants met their burden of proof of demonstrating appellee did not exercise ordinary care in paying the bad checks, and did not act in good faith and in accordance with reasonable commercial standards. There appears to be no dispute regarding the good faith of appellee in paying the forgeries. The issue is whether its method of ascertaining unauthorized signatures on its depositor's checks met the standard of care under the circumstances.

Implied in the debtor/creditor relationship between a bank and its checking account depositor is the contractual undertaking on the part of the bank that it will only discharge its obligations to the depositor upon his authorized signature. *Hennesy Equipment Sales Co. v. Valley National Bank*, 25 Ariz.App. 285, 543 P.2d 123 (1975). The mere fact that the bank has paid a forged check does not mean the bank has breached its duty of ordinary care, however. See Comment, 12 Ariz.L.Rev. 417, 425 (1970).

At trial, an operations officer for appellee testified as to the methods employed during the period the forgeries occurred to discover unauthorized signatures on depositor's checks. She testified that checks were organized so that a bundle from the same account could be compared with the authorized signature on the bank's signature card. A staff of five filing clerks handled an average of approximately 1,000 checks each per hour in this manner. She testified it was common for a file clerk to become familiar with the drawer's signature in large accounts such as appellants'. An official of a large Arizona bank testified that tellers and file clerks are not trained to be handwriting experts. He testified that in his opinion, because most large banks have completely abandoned physical comparison of checks with the signature card, the system employed by appellee was better than the norm of the banking community in Southern Arizona.

In view of this and other evidence, we conclude that there was sufficient evidence to support findings 13 and 14 and the judgment entered below. Similar methods of comparing drawer's signatures have been upheld as constituting ordinary care and being within reasonable commercial standards across the country. See *Nu-Way Services Inc. v. Mercantile Trust Co. National Association*, 530 S.W.2d 743 (Mo.App. 1975); *Huber Glass Co. v. First National Bank*, 29 Wis.2d 106, 138 N.W.2d 157 (1965); *Terry v. Puget Sound National Bank*, 80

---

2. Writ ref'd n. r. e. per curiam, 472 S.W.2d 117 (Tex.1971).

3. See generally, Annot., 67 A.L.R.3d 144 (1975), "Commercial Paper: What Amounts to 'Negligence Contributing to Alteration or Unauthorized Signature' under U.C.C. Sec. 3–406."

**12**

Wash.2d 157, 492 P.2d 534 (1972); *Parsons Travel, Inc. v. Hoag,* 18 Wash.App. 588, 570 P.2d 445 (1977). Appellant Knight and his controller admitted the forgeries were quite good. Appellants also argue that because the bank tellers recognized Miss Garza was cashing large checks made to herself and her boyfriend and that she was driving an expensive sports car, they had a further duty to check the validity of the drawer's signature. This evidence was balanced by testimony that Miss Garza thoroughly explained the reasons for the large checks as increased salary, bonuses, and payment of Knight's expenses while he was out of town. Knight and Miss Garza were in the bank together on a regular basis and the tellers knew Miss Garza was authorized to handle large amounts of Knight's money. See *Cooper v. Union Bank,* 9 Cal.3d 123, 371, 507 P.2d 609, 107 Cal.Rptr. 1 (1973).

■ Finally, there was evidence that some K & K Manufacturing checks were forged with a rubber stamp facsimile of Knight's signature, which was only authorized for use with the Knight Foundry account. Appellants argue appellee fell below the standard of ordinary care in honoring these checks. The trial court personally examined appellee's expert witness on this subject. There was testimony that if facsimile signatures appear "all of a sudden" on the checks, the depositor may be contacted, but there was sufficient evidence that the piecemeal use of the stamp here, which was at times authorized by appellants, was not such that appellee should be held to bring it to their attention. The finding of fact that appellee's acts, including those regarding the facsimile signature, did not fall below ordinary care or reasonable commercial standards was not clearly erroneous.

Affirmed.

HOWARD, J., and JACK T. ARNOLD, Judge of the Superior Court, concur.

NOTE: Judge Ben C. Birdsall having requested that he be relieved from consideration of this matter, Judge Jack T. Arnold was called to sit in his stead and participate in the determination of this decision.