OPINION
HATHAWAY, Judge.
Gulf Homes brought suit against Andres Gonzales and Teresa Gastelum for failure to make payments required under a lease with purchase option for a mobile home. Defendants counterclaimed alleging, inter alia, violations of the Uniform Commercial Code, the Arizona Retail Installment Sales Transactions Act and the federal Truth-in-Lending Act. After trial to the court sitting without a jury, the court found (1) that the lease/option was a security agreement subject to Article 9 of the UCC (A.R.S. § 44-3101, et seq.); (2) that the disposition of the mobile home after repossession by Gulf Homes was not commercially reasonable; (3) that the transaction was subject to the Arizona Retail Installment Sales Transactions Act (A.R.S. § 44-6001, et seq.) and that Gulf was in violation thereof; (4) that defendants could not recover statutory damages as provided for in A.R.S. § 44-3153(A); and (5) that the Truth-in-Lending Act applied to the transaction and that Gulf violated the act. The court awarded defendants $1,000 for the Truth-in-Lending Act violation, and awarded Gulf $990 as a deficiency from the sale of the mobile home. This appeal and cross-appeal followed.
APPEAL
I
The first issue raised by Gulf is that the trial court erred in finding that the agreement was not a lease but rather created a security interest. We believe the trial court was correct.
The agreement in question, entitled “Rental Agreement,” called for a first month payment of $495 and subsequent payments of $125 per month for 120 months. It also included a purchase option clause permitting the defendants to acquire the mobile home upon payment of $1.00. A.R.S. § 44-2208(37) defines “security interest” and states:
"... Whether a lease is intended as security is to be determined by the facts of each case; however:
s«c jj:
(b) An agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.”
Gulf argues that consideration must be given to the unique facts of the situation in order to determine whether or not a lease is intended as a security interest. We disa *4 gree. The statute, after stating that the facts of each case are controlling, carves out an exception where the option price is only nominal consideration. Here defendants only had to pay $1.00 in order to acquire title. Gulf argues that the option could be exercised at any time during the 10-year period and if it were exercised after one or two years, the option price would be considerable. The agreement, however, in paragraph 2 requires a “... monthly rental of $125 for a period of 120 months, ...” [emphasis added] The option could be exercised only “at the end of such period ” if all required payments had been made for the “period specified in paragraph two (2) hereof." [emphasis added] The agreement clearly called for payments to be made totaling $125 times 120 months. Only then could the option be exercised.
Furthermore, the agreement required the defendants to pay to Gulf all amounts required for taxes and assessments. E-Z Livin’ Mobile Sales, Inc. v. Van Zanen, 26 Ariz.App. 363, 548 P.2d 1175 (1976). Finally, we note that Gulfs original complaint avers that the defendants granted Gulf a security interest in the mobile home.
II
Gulf next contends that the disposal of the mobile home was not done in a commercially unreasonable manner. Gulf argues that it sought the alternative relief of judicial foreclosure in the court below and that the subsequent disposal was commercially reasonable. The original complaint in this action was filed in March 1976. The mobile home was repossessed by Gulf in September 1976. In August 1979 Gulf sold the mobile home under another rental/purchase option agreement to third parties. This subsequent disposition of the mobile home precludes the relief sought by Gulf. Under A.R.S. § 44-3150(D):
“When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor’s rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests
Clearly, the relief of judicial foreclosure and sheriff’s sale requested by Gulf in its complaint and repeated in its opening brief, has been rendered moot by Gulf’s own actions.
In addition, we note that Gulf never provided defendants with the notice required by A.R.S. §§ 44-3150 and 3151 prior to the sale in-August 1979.
We believe the trial court was correct in finding that Gulf failed to make a commercially reasonable disposition of the mobile home.
Ill
The third issue raised by Gulf concerns the applicability to this transaction of the Arizona Retail Installment Sales Transactions Act, A.R.S. § 44-6001, et seq. It argues that neither the transaction nor Gulf were subject to the act.
The trial court found that the transaction in question was subject to the Retail Sales Act and absent manifest error where the evidence supports its action we will not substitute our judgment for that of the trier of fact. United Bank v. Mesa N.O. Nelson Co., 121 Ariz. 438, 590 P.2d 1384 (1979); K & K Manufacturing Inc. v. Union Bank, 129 Ariz. 7, 628 P.2d 44 (App. 1981). We find sufficient evidence in the record to support the trial court’s action.
The president of Gulf testified on direct examination that Gulf Homes was in the business of mobile home sales and service and the rental of mobile homes. Gulf was a retail seller and defendants were retail buyers. The agreement in question was a “retail installment contract” as defined in A.R.S. § 44-6001(9) (now A.R.S. § 44-6001(10)). That definition includes language similar to that found in A.R.S. § 44-2208(37) regarding options to purchase for nominal consideration.
Having found that the provisions of the Retail Sales Act are applicable to the trans *5 action, we must now determine whether there has been a violation and consequently a forfeiture of finance charges. A.R.S. § 44-6002(C), before amendment in 1980, stated:
“A retail installment contract may provide for, and the seller or holder may charge, collect and receive, a delinquency charge on each installment in default more than ten days, in an amount not to exceed five percent of each installment or five dollars whichever is less ____”
The rental agreement here provided in paragraph 7 for a late charge of $5.00 on “any five day delinquent payment,” a clear violation of the statute. Gulf argues that the charges have to be actually assessed before there is a violation of the statute. Its argument, however, is premised on the wording of the statute after the 1980 amendments which, inter alia, deleted the “may provide for” language. The statute now states that a seller may charge a late payment fee. This transaction took place in 1975 and the original complaint, answer and counterclaim were filed in 1976. When a statutory change affects substantive rights, the change is not applied retroactively to proceedings already pending. Allen v. Fisher, 118 Ariz. 95, 574 P.2d 1314 (App.1977). Since the right at issue here is substantive in nature, the statute in effect at the time of the transaction must control and Gulf was not entitled to any finance charges.
IV
The final issue raised by Gulf is the applicability of the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., and the regulations thereunder, Federal Reserve Regulation Z, 12 C.F.R. § 226.1, et seq. The trial court found that the agreement came within the purview of the act and awarded defendants the statutory amount of $1,000 as damages for Gulf’s violation thereof.
A credit sale is defined in 15 U.S.C. § 1602(g) as:
“... any sale in which the seller is a creditor. The term includes any contract in the form of a ... lease if the lessee ... for ... a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.”
As we have previously discussed, the agreement provided for an option to purchase the mobile home for $1.00. This therefore was a credit sale. The fact that defendants could terminate the agreement does not remove the transaction from the provisions of the act. Davis v. Colonial Securities Corp., 541 F.Supp. 302 (E.D.Pa. 1982).
Gulf maintains that it was not a creditor and therefore is not subject to the disclosure provisions of the act. We disagree. The record contains testimony by Gulf’s president that security agreements entered into by Gulf would be sold to banks or finance companies and that Gulf would use the contract forms “provided by the finance factors that bought them.” Gulf argues that defendants presented no evidence that it extended credit on a regular basis and in the ordinary course of business. The record contains sufficient evidence of other sales and rentals by Gulf to support the trial court’s determination that Gulf was subject to the provisions of the act.
We now must determine if the trial court was correct in its determination that there were violations of the act in the transaction before us. Defendants argue that the agreement violates four different sections of Regulation Z. The trial court found that Gulf, among other violations, failed to disclose the amount and method of determining any penalty or other charge for prepayment of the principal balance due under the agreement. Gulf argues that the agreement required that the defendants make all of the payments, that they could not prepay any unpaid balance and therefore there was no penalty. We disagree. The agreement only prevented defendants from exercising the option until the end of the period specified. There was nothing in the agreement prohibiting defendants from making a lump sum pay *6 ment of any amount owed. While it might be unlikely, they at any time could have tendered to Gulf full payment. Gulf would have us believe that if defendants paid the remaining balance due one year after execution of the agreement, the payment of an additional nine years’ interest would not constitute a penalty. We believe this does represent a penalty for early payment and therefore failure to adequately disclose it was a violation of 12 C.F.R. § 226.8(b)(6) & (7).
CROSS-APPEAL
I
The first issue raised in the cross-appeal is whether the defendants’ claim of statutory damages under A.R.S. § 44-3153 is barred by the statute of limitations. The mobile home was repossessed by Gulf in September 1976 and was sold in August 1979. Defendants first counterclaimed for statutory damages in their amended answer and counterclaim in May 1978. The trial court, following Day v. Schenectady Discount Corporation, 125 Ariz. 564, 611 P.2d 568 (App.1980), found that the one-year statute of limitations imposed by A.R.S. § 12-541 applied and that the claim was time barred.
In Day, we did not address the issue of whether statutory damages under A.R.S. § 44-3153 are in the nature of a penalty or forfeiture since it was not raised. A.R.S. § 12-541 states:
“There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions:
* sfe * * sfc *
3. Upon a liability created by statute, other than a penalty or forfeiture.” (Emphasis added)
Defendants maintain that the remedy provided for in A.R.S. § 44-3153 is a penalty and therefore the one-year statute of limitations does not apply. They argue that either the two-year statute of limitations contained in the Uniform Commercial Code or the general four-year period in A.R.S. § 12-550 should apply. Under either of these statutes, defendants’ claim would not be time barred.
We agree with defendants that the remedy provided for in A.R.S. § 44-3153 is a penalty. In Gulf Homes, Inc. v. Goubeaux, 136 Ariz. 33, 664 P.2d 183 (Ariz. 1983), the supreme court recently stated:
“This statute (A.R.S. § 44-3153(A)) includes a consumers goods remedy in the nature of a penalty, legislatively adopted to discourage noncompliance [with the UCC] by creditors.” [664 P.2d at p. 186]
A “penalty clause” is described in Black’s Law Dictionary, 5th edition, as “any provision in a contract or law which calls for the exaction of a penalty instead of actual damages.” The statute provides:
“... If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of §§ 44-3147 to 44-3153, inclusive. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.”
See also J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code (2nd ed. 1980), § 26-14 where the authors, in discussing the last sentence of the above statute, state:
“The sentence is a penalty — a ‘minimum recovery’ the comment calls it — and the consumer is entitled to it even if he has not suffered a penny’s loss.”
We believe the trial court applied the wrong statute of limitations to the defendants’ counterclaim. Statutory damages in the amount of the time price differential of $7,500 plus ten percent of the cash price of $7,500 ($750) should have been awarded defendants.
*7 ii
The final issue raised by defendants in their cross-appeal is that the trial court erred in determining the deficiency they were liable for. They argue that the court’s reliance on Chapman v. Field, 124 Ariz. 100, 602 P.2d 481 (1979), was incorrect because Chapman only applies when the collateral is retained by the secured party. We believe this to misread Chapman. The court there said:
“The courts are not in agreement as to whether failure under the Uniform Commercial Code to give adequate notice bars the right to a deficiency judgment____ A third line of cases holds that lack of notice does not bar a deficiency, but that the debtor is entitled to a setoff for any loss which the debtor can show he suffered by lack of notice, [citations omitted] We agree with the latter holding, [citation omitted] and believe the same rule should apply where the secured party retains the chattel without sale.” [Emphasis supplied] 124 Ariz. at 104, 602 P.2d 481.
While in Chapman the secured party retained the chattel, the court stated that the same rule applies in either a sale or a retention situation.
We believe the trial court properly utilized the provisions of A.R.S. § 44-3150 in order to determine whether there was a deficiency or a surplus. However, we believe that it used improper figures in deciding that there was a $990 deficiency.
We first consider the trial court’s determination that Gulf expended $3,500 in repairs and transporting the mobile home. During cross-examination of the president of Gulf while he was being questioned concerning receipts for repair costs in excess of $3,000, Gulf’s counsel stated to the court:
“Your Honor, he is talking about some documents that we are not claiming. It is completely irrelevant, this three thousand dollar stuff. We have not made a claim for it. I don’t know how it got into this case. I don’t know why we are talking about this other than to mislead your Honor or create some bad impression about something we are not litigating.”
In addition, in its post-trial memorandum, Gulf specifically requests $888.71 for repossession and repairs. While Gulf’s president had testified in very general terms concerning repairs in excess of $3,000, we believe it was error for the trial court, sua sponte, in light of Gulf’s statements, to find that $3,500 had been expended.
The record indicates that the subsequent sales price was $9,635. Deducting from this the $888.71 claimed by Gulf results in a balance of $8,746.29 to be applied to the indebtedness which is $7,125. The end result is a surplus of $1,621.29. Judgment should have been entered for defendants in that amount.
Defendants seek the award of attorney’s fees. Attorney’s fees are not recoverable unless provided for by agreement between the parties or by statute. Taylor v. Southern Pacific Transportation Company, 130 Ariz. 516, 637 P.2d 726 (1981). In this case, the agreement did not contain any provision for the award of attorney’s fees to defendants. Nor are they entitled to attorney’s fees under A.R.S. § 12-341.01. The original complaint in this action was filed March 10, 1976. The effective date of A.R.S. § 12-341.01 was September 1, 1976. The statute does not apply to suits commenced before its effective date. Bouldin v. Turek, 125 Ariz. 77, 607 P.2d 954 (1979). Defendants may not claim attorney’s fees under either the agreement or the statute.
Defendants also ask for statutory attorney’s fees in connection with the Truth-in-Lending violation. Under 42 U.S.C. 2996f(b)(1) and 45 C.F.R. 1603.3, Legal Aid is prohibited from providing legal assistance in fee generating cases unless other adequate representation is unavailable. The criteria for determining whether other adequate representation is available are contained in 45 C.F.R. 1609.4. The record does not indicate that any of these criteria were met. Therefore, defendants *8 are not entitled to statutory attorney’s fees.
The trial court is directed to enter judgment for defendants in the amount of $8,250 on their claim for statutory damages and in the amount of $1,621.29 as surplus from the sale of the mobile home. In all other respects, the judgment is affirmed.
HOWARD, C.J., and BIRDSALL, J., concur.