United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-2781

Leo G. Wetherill and LGW      *
Energy Resources, Inc.,      *
     *
     Appellants,      *   Appeal from the United States
     *   District Court for the Western
     v.      *   District of Missouri.
     *
Putnam Investments, a Mutual      *
Fund, and State Street Bank &      *
Trust Company, a State Banking      *
Corporation,      *
     *
     Appellees.      *

_____

Submitted: February 13, 1997

Filed: August 8, 1997

_____

Before HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and MELLOY,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

___

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

Leo G. Wetherill and LGW Energy Resources, Inc., appeal from the district court's[2] order granting the defendants' motion for summary judgment and dismissing the complaint.  For the reasons discussed below, we affirm.

                                    I.
In August, 1985, Mr. Wetherill (LGW's president, vice-president, and sole shareholder) opened a corporate cash trust account for LGW with defendant Putnam Investments, Inc.   Defendant State Street Bank and Trust Company contracted with Putnam to be the account's custodian.   Mr. Wetherill and LGW authorized State Street to redeem Putnam account shares upon the receipt of a signed check drawn on the Putnam account, and designated Mr. Wetherill as the only person who was allowed to write checks. They also designated P.O. Box 8651 in Kansas City, Missouri ("the Missouri Box"), as the address of record for the account.

LGW subsequently appointed Gary Leitner to the position of corporate secretary. Mr. Leitner prepared tax returns and corporate documents, kept the corporate books, and managed LGW's various accounts in accordance with Mr. Wetherill's instructions, much as a corporate treasurer would. Mr. Wetherill instructed Mr. Leitner to deposit  LGW's corporate profits in the Putnam account, but he was not authorized to remove funds from the account; as already indicated, that privilege belonged to Mr. Wetherill alone.

When Mr. Leitner became secretary, Mr. Wetherill gave him all of LGW's financial records.  He also instructed Mr. Leitner to change the corporate address of record for the state of Kansas to Mr. Leitner's home address in Olathe, Kansas, where Mr. Leitner would be LGW's registered agent.  Sometime between April and December, 1986, the address of record for the Putnam account was changed to P.O.

_____

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Box 4000 in Olathe, Kansas ("the Kansas Box"). The record strongly indicates that Mr. Leitner made this change and that he did so without Mr. Wetherill's knowledge. Mr. Wetherill, however, was aware of the existence of the box and of the fact that some corporate mail was received there. The defendants did not notify Mr. Wetherill of the address change and did not confirm with Mr. Wetherill that this change was authorized.

From December, 1986, through January, 1989, State Street cashed checks that Mr. Leitner had fraudulently signed and endorsed in an amount between $275,000 and $300,000. Mr. Leitner signed Mr. Wetherill's name on the checks and several times added his own name to Mr. Wetherill's, along with the notation "treasurer." The defendants neither verified that the signatures were indeed Mr. Wetherill's nor notified Mr. Wetherill of the withdrawals. Putnam did send LGW monthly and annual account statements that contained this information, as well as statements following each transaction. Putnam also sent monthly, annual, and transactional statements to LGW's broker.

Mr. Wetherill and LGW became suspicious of Mr. Leitner's activities late in 1992 or early in 1993 and confirmed the nature of those activities in May, 1993. In a letter dated May 11, 1993, Mr. Wetherill's and LGW's broker asked Putnam to provide them with any account-related documents in its possession and stated that Mr. Wetherill's "business has been subjected to embezzlement by a former business associate." It was not until a subsequent letter, dated November 1, 1994, that Mr. Wetherill and LGW identified the checks at issue, stated that "[t]hese checks were signed and/or endorsed by an unauthorized person," and asked the defendants to make good on the losses to the Putnam account. When the defendants refused to do so, Mr. Wetherill and LGW sued them, seeking recovery on theories of fraud, negligence, conversion, breach of fiduciary duty, failure to adhere to commercially reasonable standards, and bad faith.

II.

We agree with the district court that Massachusetts law governs this dispute. The Massachusetts version of U.C.C. § 4-406(4) requires a bank customer to report an unauthorized signature on his or her checks to the relevant bank within one year from the time that a bank statement is "made available" to that customer, or the customer "is precluded from asserting against the bank ... [his] unauthorized signature." A statement is "made available" when a bank "sends" its customer an account statement, U.C.C. § 4-406(1), and under U.C.C. § 1-201(38), one "sends" a statement when one deposits it "in the mail ... properly addressed." Mr. Wetherill and LGW maintain that the statements here were not "properly addressed" because they were mailed to an address other than the one that Mr. Wetherill agreed to for their receipt. As the court below correctly held, however, "[t]he receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." U.C.C. § 1-201(38).

We believe that the record does not reveal any likelihood that the statements would have arrived at and been received at the Missouri Box any sooner than they would have at the Kansas Box, at least not significantly so, partly because they would have been sent by mail in any case and partly because Mr. Leitner lived in Kansas. We thus believe that the district court correctly concluded that "the account statements were actually received by LGW within the time" that they would have been received at the Missouri Box. The statements were therefore properly sent.

Mr. Wetherill and LGW further contend that even if the statements were "properly sent" within the meaning of the statute, the time for giving notice did not begin to run until they discovered or should have discovered Mr. Leitner's activity. But the time limit in the statute is "not a statute of limitations which might not start to run until the [appellants] knew or should have known of [their employee's] treachery"; rather, it fixes the time within which the appellants must give notice to the defendants. *Jensen v. Essexbank,* 483 N.E.2d 821, 822 (Mass. 1985). U.C.C. § 4-406(4)

-4-

establishes a statute of repose under which the time for bringing suit expires one year following the availability of the relevant account statements. *See* 7 RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 4-406:1, Official Code Comment, ¶ 5, at 451, § 4-406:11 at 458 (3d ed. 1995).

We believe, moreover, that Mr. Wetherill and LGW would not prevail even if the statute begins to run when a customer should have discovered the forgeries. Mr. Leitner's illegal activities lasted from December, 1986, through January, 1989. Mr. Wetherill did not discover Mr. Leitner's fraud until 1992 or 1993. During this entire period, Mr. Wetherill never sought to review the account statements in Mr. Leitner's possession, never sought to review the statements in his broker's possession, and never contacted the defendants to ensure that all was as it should be. We think it likely that other records in Mr. Leitner's possession, such as the corporate tax returns, would also have revealed the fraud had Mr. Wetherill reviewed them even once. The fact that Mr. Leitner did not volunteer the information did not render the information unavailable to Mr. Wetherill and LGW. Rather, their own tardiness in reviewing their financial status rendered the information unavailable. Had Mr. Wetherill exercised reasonable diligence, he would have discovered the forgeries years before he finally did so.

Mr. Wetherill and LGW likewise would not prevail if, as they also maintain, the statute begins to run when a customer actually discovers the forgeries. Mr. Wetherill and LGW allege that they discovered the forgeries in April, 1993. If their proposed interpretation of the statute is right, they had until April, 1994, to notify the defendants, and they argue that they in fact notified the defendants of the account's problems in their broker's May 11, 1993, letter. But that letter informed the defendants only that Mr. Wetherill had been defrauded and requested the Putnam account records; it did not state that money had been improperly taken from the account or that the fraud was related to account activities. Mr. Wetherill and LGW also assert that a March, 1993, Justice Department subpoena requesting all records pertaining to the account notified

the defendants of Mr. Leitner's activities.  Like the May 11 letter, however, the subpoena did not advert to any improper withdrawal of funds from the account.

We believe that the defendants did not have notice of Mr. Leitner's dishonest activities until the November, 1994, letter to them.  Therefore, even if, as Mr. Wetherill and LGW maintain, the statute began to run when they actually discovered the fraud, their claim would still be barred, because they did not notify the defendants of Mr. Leitner's activities within one year following their discovery of those activities.

Mr. Wetherill and LGW also assert that a bank cannot rely on the § 4-406 defense if it sent the statements to a customer's unethical employee.  But "*Jensen v. Essexbank*, 396 Mass. 65 (1985) indicates that Massachusetts [has adopted] the view of a majority of jurisdictions that '[m]isplaced confidence in an employee will not excuse a depositor from the duty of notifying the bank ... [because] the depositor is chargeable with the knowledge of all facts a reasonable and prudent examination of his bank statement would have disclosed if made by an honest employee.' "  *Robert Francis Construction Company, Inc. v. MassBank for Savings*, 4 Mass. L. Rptr. 181 n.1 (Mass. Super. Ct. 1995), quoting *K&K Manufacturing, Inc. v. Union Bank*, 628 P.2d 44, 48 (Ariz. 1981).  *See also Pine Bluff National Bank v. Kesterson,* 520 S.W.2d 253, 258-59 (Ark. 1975). The fact that the statements were sent to Mr. Leitner did not exempt Mr. Wetherill and LGW from their responsibility of notifying the defendants.

Mr. Leitner cashed the final check in January, 1989.  When, presumably in early 1989, the defendants mailed the January statement, the one-year statute of repose started to run on the final check; it had already begun running on the earlier checks, because it runs separately on each item in a series of items.  *Roy Supply, Inc. v. Wells Fargo Bank, N.A.,* 46 Cal. Rptr. 2d 309, 323 (Cal. Ct. App. 1995).  Under § 4-406, therefore, Mr. Wetherill's and LGW's action was barred one year later -- several years before they notified the defendants in 1994.

III.

Mr. Wetherill and LGW maintain that § 4-406 applies only to claims brought under the U.C.C., as, for instance, to warranty claims under U.C.C. § 3-417. *See Sun 'n Sand, Inc. v. United California Bank,* 582 P.2d 920 (Cal. 1978), and *Appley v. West*, 832 F.2d 1021 (7th Cir. 1987). They therefore contend that their claims, all of which are common-law causes of action, are not barred. We disagree.

First of all, § 4-406(4) itself states quite generally that the bank customer "is precluded from asserting against the bank [an] unauthorized signature" if the customer does not comply with its notice requirements. The very generality of the language suggests that it bars the bank's liability in the relevant circumstances, regardless of the theory on which the customer is relying. There is nothing in § 4-406(4) that supports the view that only claims under the U.C.C. are barred. It is no doubt the sweeping language of the relevant section that led one commentator to conclude, we think correctly, that the "time limits imposed by U.C.C. § 4-406 are applicable without regard to the theory on which the customer brings his or her action." *See* 7 RONALD A. ANDERSON, ANDERSON ON THE COMMERCIAL CODE § 4-406:24 at 466.

More importantly, the Supreme Judicial Court of Massachusetts, whose law it is we are bound to apply, has specifically held that § 4-406(4) bars claims sounding in contract or negligence, *see Jensen*, 483 N.E.2d at 822. The claims of negligence, conversion, breach of fiduciary duty, and failure to adhere to commercially reasonable standards are all based on the defendants' alleged failure to act in a reasonable manner, and we do not hesitate to conclude that the rule of *Jensen* extends to all of them. The other two claims -- for fraud and bad faith -- do not literally fall within the ambit of *Jensen*. But Mr. Wetherill and LGW produced in any event insufficient evidence in support of these claims to survive a motion for summary judgment, so we need not reach the question of whether § 4-406(4) is applicable to them.

IV.

The district court's grant of summary judgment is therefore affirmed for the reasons indicated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.