590 P.2d 1384

**UNITED BANK of Arizona, a Banking Institution, Appellant,**

v.

**MESA N. O. NELSON COMPANY, INC., a corporation, Appellee.**

**No. 13946.**

Supreme Court of Arizona, In Banc.

Feb. 14, 1979.

Jacob S. Alpert, Phoenix, for appellee.

**STRUCKMEYER, Vice Chief Justice.**

This is an appeal by the United Bank of Arizona from the entry of a judgment in the Superior Court favorable to appellee and from an order denying its motion for a new trial. Affirmed.

The appellee, Mesa N. O. Nelson Company, Inc., a wholesale plumbing supply company, brought this action against the United Bank alleging that the bank converted eleven joint payee checks by paying the checks over the forged endorsement of Nelson.[1] The checks were issued by Douglas P. Patterson Development Corporation, the owner and general contractor of a building project known as Tempe Village and were for plumbing work which had been completed by Henry Sasser. Appellee's signature was forged by Henry Sasser, a plumbing contractor working on the Tempe Village project, who was the Nelson Company's joint payee on the checks.

At the trial, the bank admitted that its employees were guilty of "technical error" when they paid the checks over the appellee's unauthorized endorsement, but argued that appellee was estopped because it was negligent in its business dealings with Sasser. The United Bank also set up the defense of ratification. These defenses are predicated on A.R.S. § 44–2541 (U.C.C. § 3–404). It provides:

"A. Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

B. Any unauthorized signature may be ratified for all purposes of this article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

Moore & Romley, by Robert O. Dyer, Phoenix, for appellant.

1. A.R.S. § 44–2556 (U.C.C. § 3–419) provides in part:

"A. An instrument is converted when:

\* \* \* \* \* \*

3. It is paid on a forged endorsement."

The trial court found that United Bank's affirmative defenses were not sustained by the evidence and that appellee did not ratify the Sasser forgeries. United Bank argues on appeal that the judgment was not justified by the evidence and that its statutory defenses were established by the evidence.

We have said:

"No principles are better settled in Arizona than, first, that the duty of a reviewing court begins and ends with the inquiry whether the trial court had before it evidence which might reasonably support its action viewed in the light most favorable to sustaining the findings, and, second, that the reviewing court will not weigh conflicting evidence on appeal." *O'Hair v. O'Hair,* 109 Ariz. 236, 240, 508 P.2d 66, 70 (1973).

Our review of the record leads us to the conclusion that the trial court's findings are supported by the evidence.

Appellant points to sixteen items of evidence which it argues support a conclusion contrary to that of the trial court. But since there are ample facts which support the judgment, we will not weigh the details to resolve conflicts. At the onset we find the statements of the Supreme Court of New Jersey are enlightening. In *Thermo Contracting Corp. v. Bank of New Jersey,* 69 N.J. 352, 354 A.2d 291 (1976), in construing U.C.C. § 3–404, the New Jersey court said:

"The meaning of ratification for purposes of negotiable instruments law is not dissimilar from its general meaning in the law of agency. Ratification is defined in Section 82 of *Restatement of Agency* 2d (1957):

Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

* * * Ratification requires intent to ratify plus full knowledge of all the material facts. *Passaic-Bergen Lumber Co. v. United States Trust Co.,* 110 N.J.L.

315, 164 A. 580 (E. & A. 1933); 2 Anderson, U.C.C. § 3–404:7, p. 924 (2d Ed. 1971). Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act, *East Orange v. Bd. of Water Comm'rs of East Orange,* 73 N.J.Super. 440, 180 A.2d 185 (Law Div. 1962), aff'd 40 N.J. 334, 191 A.2d 747 (1963); *Johnson v. Hospital Service Plan of N. J.,* 25 N.J. 134, 135 A.2d 483 (1957); from inaction, *Vogt v. Borough of Belmar,* 14 N.J. 195, 101 A.2d 849 (1954); or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act. *Common Wealth Ins. Systems, Inc. v. Kersten,* 40 Cal. App.3d 1014, 115 Cal.Rptr. 653 (Ct. of App. 1974)." 69 N.J. at 360–61, 354 A.2d at 295.

The bank's position in the present case is that Gerald Baker, president of appellee company, ratified Sasser's unauthorized endorsements of the Patterson joint payee checks. The bank points out that appellee initiated the joint payee check arrangement on the expectation of payment of monthly progress checks by Patterson, but that during the fifteen-month period of the project appellee received only ten checks for endorsement, while eleven checks were negotiated by Sasser with unauthorized endorsements. It is argued that Baker should have known that Sasser was receiving the joint payee checks from Patterson since Sasser's sole income at this time came from the Tempe Village project and he was paying appellee for materials with personal checks.

While Sasser testified that he informed Baker that he had received the joint payee checks and had negotiated them without appellee's endorsement, Baker testified that during the course of the Tempe Village project he was not aware of any joint payee checks which he did not personally endorse. The bank insists that it is inconceivable that Baker did not know of Sasser's endorsements. However, the trial court found that Sasser did not advise Nelson of the receipt of the Patterson checks and the subsequent forged endorsements. The court specifical-

ly found that Nelson was not aware of the forgeries until September, 1975, when Patterson told Baker that the joint payee checks had been given to Sasser.

■ It is emphasized that on review the findings of fact of a trial court will not be set aside unless clearly erroneous and that due regard will be given to the opportunity of the trial court to judge the credibility of witnesses. *Rossi v. Stewart*, 90 Ariz. 207, 367 P.2d 242 (1961); *Donahoe v. Marston*, 26 Ariz.App. 187, 547 P.2d 39 (1976); Rule 52(a), Arizona Rules of Civil Procedure, 16 A.R.S. The trial court found Baker's testimony more credible than Sasser's and determined that Baker did not know that Sasser was forging the Patterson checks. These findings are not clearly erroneous and, since they are not inherently incredible, we are compelled to accept them. Moreover, since the doctrine of ratification is based upon knowledge of all the material facts see *O'Neil v. Goldenetz*, 53 Ariz. 51, 85 P.2d 705 (1938); *Fuqua Homes, Inc. v. Grosvenor*, 116 Ariz. 424, 569 P.2d 854 (App. 1977), and the trial court found that Baker was not aware of Sasser's forgeries, it cannot be said that Baker knew of all the material facts and ratified Sasser's actions.

We hold the trial court's determination in this regard is supported by substantial evidence and will not be upset on appeal.

By statute A.R.S. § 44–2541(A), it is provided that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he * * * is precluded from denying it * * *." This language, incorporated in U.C.C. § 3–404(1), was retained from Section 23 of the Uniform Negotiable Instruments Law, "to recognize the possibility of an estoppel against the person whose name is signed, as where he expressly or tacitly represents to an innocent purchaser that the signature is genuine; and to recognize the negligence which precludes a denial of the signature." Official Comment 4, Uniform Commercial Code (U.L.A.) § 3–404.

The bank argues that Nelson is estopped from recovering against it since the losses sustained by appellee were substantially caused by Nelson's negligence. The bank produced evidence at the trial that there was a deviation from appellee's normal credit procedures in that when Sasser's account was established, appellee did not require more than a joint payment arrangement with Patterson; that the Nelson Company continued to provide Sasser with materials in spite of the fact that Sasser's account was many thousands of dollars in arrears with some arrearages being over 120 days old; and that the Nelson Company did not file liens on the Tempe Village property and failed to collect a note executed by Patterson in favor of Sasser which was assigned to Nelson. Appellee acknowledges that it was lax in the conduct of its business relations with Sasser.

From the foregoing, the bank argues that the trial court erred when it determined that the bank's affirmative defense of estoppel was not sustained by the evidence. It places its principal reliance on *Starkey Construction, Inc. v. Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (Ark.1970). There, the appellant, a general contractor, was involved in two construction projects in which Elcon, Inc. was hired as an electrical subcontractor. Starkey's progress payments were made by joint payee checks issued to Elcon and its materialmen. Elcon forged the signatures of the materialmen and successfully negotiated the checks. After notice of an intent to file liens on the properties by Graybar Electric Company, one of Elcon's materialmen, and after Starkey Construction was apprised of the forgeries, Starkey instituted suit against Elcon, Elcon's bank, Starkey's bank, and all known possible unpaid labor and material suppliers of Elcon, seeking an accounting and adjudication of rights between all parties.

The trial court held that Graybar was due $6,818.41 on the checks forged by Elcon. This amount was included in Graybar's judgment against Starkey, and Starkey was given judgment in the same sum against its bank. Starkey's bank was in turn given

judgment for $6,818.41 against Elcon's bank, which had paid on the forgeries. The Arkansas Supreme Court reversed, stating:

> "We agree that if Graybar had been deprived of its money because of the forgery, this appellee would be entitled to the judgment, but we think, and find, that the preponderance of the evidence reflects that the forging of its name on the progress payment checks had nothing to do with Graybar's failure to be paid monthly. To the contrary, it appears that Mr. Lanigan of Graybar voluntarily extended credit to Elcon with full knowledge of the progress payment checks that were being issued to Elcon by Starkey." 457 S.W.2d at 515.

The Court noted that Graybar requested joint payee checks and yet failed to notify the general contractor when the checks did not arrive. The court also accepted the testimony of Jerry Lee, the general manager of Elcon, who testified that he had forged several of the checks in the presence of F. C. Lanigan, financial manager of Graybar and that while Lanigan refused to expressly authorize the practice, he had been told by Lanigan that "what Lee did with the checks was his own business." Also, when Starkey called Graybar to determine how much money Elcon owed Graybar, Lanigan indicated the account was being paid satisfactorily. Lee testified that Lanigan permitted him to take whatever amount he wanted out of the joint payee checks so long as Elcon's 90–day arrearage did not exceed $5,000.00. Although Lanigan denied most of this testimony, the Arkansas Supreme Court concluded:

> "that a look at Graybar's conduct during the seven month period of this job (along with the testimonies of Starkey and Lee), establishes that it would be inequitable to permit Graybar to, in effect, go back and collect each successive progress payment check at the expense of First State and First National for the reason that the forgery of Graybar's name was *not the cause of Graybar's failure to receive its money from the progress payment checks;* rather, the cause was the conduct of Graybar in improvidently carrying Elcon's account." 457 S.W.2d at 518.

On its facts, Starkey is plainly distinguishable from the instant case. The Arkansas Supreme Court's conclusion that Graybar acted with knowledge that Elcon was forging its endorsement on the joint payee checks is contrary to the trial court's express finding in this case that Nelson and its employees were not aware of Sasser's forgeries.

But even if Nelson's business practices were a cause of its loss, the defense of estoppel is not available to the bank. Statutes should be construed consistent with the common law, *Farnsworth v. Hubbard,* 78 Ariz. 160, 277 P.2d 252 (1954), and where the Legislature has not clearly manifested its intent to repeal the common law rule, it will not be abrogated. *Tucson Gas & Electric Co. v. Schantz,* 5 Ariz.App. 511, 428 P.2d 686 (1967). In Arizona, estoppel is not applicable where the one asserting the doctrine is guilty of misconduct toward the person against whom he seeks to have estoppel applied. *Valley National Bank of Phoenix v. Electrical District Number Four,* 90 Ariz. 306, 367 P.2d 655 (1961). The bank failed to act with due care when it cashed Patterson's joint payee checks over the Nelson Company's forged endorsements. Since it was not free from fault, its defense of estoppel was not sustained by the evidence, and the trial court's determination will not be reversed.

Our holding is in accord with *Atlas Building Supply Company, Inc. v. First Independent Bank of Vancouver,* 15 Wash.App. 367, 550 P.2d 26 (1976), where the court, under facts similar to those in this case, found that the bank did not meet reasonable commercial standards when it failed to determine whether a materialman's endorsement on a joint payee check was genuine and, hence, could not prevail on the estoppel defense provided in U.C.C. § 3–404.

■ The bank raises a question as to the amount of damages awarded by the trial court, but the question was first presented in its reply brief. Rule 13(c), Arizona Rules of Civil Appellate Procedure, 17A A.R.S., provides that a reply brief "shall be confined strictly to rebuttal of points urged in the appellee's brief." Since the issue of damages was not raised until appellant's reply brief, we will not consider it. See *Evans v. Lundgren,* 11 Ariz.App. 441, 465 P.2d 380 (1970); *Evans v. Federal Savings and Loan Ins. Corp.,* 11 Ariz.App. 421, 464 P.2d 1008 (1970).

Judgment affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.