Richard W. EUTSLER, Appellant,

v.

FIRST NATIONAL BANK, PAWHUSKA,
Oklahoma, Appellee.

No. 53045.

Supreme Court of Oklahoma.

Jan. 19, 1982.

Garrison, Brown & Carlson, by Alan R. Carlson, Bartlesville, for appellant.

William B. Selman, of Rhodes, Hieronymus, Holloway & Wilson, Tulsa, for appellee.

BARNES, Vice Chief Justice:

Elwood Jepson met with the Appellant, Richard Eutsler, on October 14, 1975, to execute a contract granting Jepson a work-

ing interest in an oil well for the fee of $9,700.00. John Eutsler, the brother of Richard Eutsler, was also present at the meeting, but did not participate in the contract negotiations, nor did he have any interest therein. Jepson was prepared to pay the contract price with two certified checks, but he informed Appellant that the checks were in his car in Tulsa. Appellant authorized his brother, John Eutsler, to drive Jepson to Tulsa, accept the checks and return them to Appellant. John Eutsler picked up the checks and instead of delivering the checks to Appellant, John Eutsler cashed them at Appellee's bank. The checks named Appellant as the sole payee, and his brother, John Eutsler, had no authority in any capacity to endorse the checks in Appellant's name and his own and receive the proceeds.

When Appellant did not receive the checks, he contacted Jepson and was informed that Jepson gave the checks to his brother, John Eutsler. Jepson further related that John Eutsler had cashed them and the checks had cleared through his account. Upon obtaining copies of the cancelled checks from Jepson, Appellant contacted an officer of Appellee bank and demanded payment on the checks. The bank's officer stated that the bank would have to notify their bonding company and proceed at once to prosecute Appellant's brother, John Eutsler. This meeting took place in the early weeks of November, 1975.

Appellant then requested the bank's officer to delay prosecution of his brother, John Eutsler, and "give me a little bit of time to call John and see if he will make this right before we do that." [1]

Appellant then contacted his brother, who agreed to "make it right" and reimburse Appellant for the funds wrongfully taken. John Eutsler neglected, however, to keep his promise and some five to six months later, when Appellant could not locate his brother, in April of 1976, he again contacted Appellee bank and demanded payment on the checks.

All of the above cited facts are substantially undisputed.

Upon the bank's refusal, Appellant brought this action against the Appellee bank to recover the face amount of the checks on a theory of conversion pursuant to 12A O.S.1971, § 3–419(1)(c). Appellee bank interposed the defenses of preclusion and ratification and moved for summary judgment. The trial court sustained Appellee's motion, finding that there was no substantial controversy as to any material facts and that Appellee had established the defenses of ratification and preclusion as a matter of law, and Appellant brought this appeal.

The appeal was assigned to the Court of Appeals, Division No. 1, for opinion. The Court of Appeals reversed the trial court and remanded the case for trial on the merits on the basis that Appellee bank failed to prove that all its actions were in good faith, good faith being an essential element of the defense of ratification under 12A O.S.1971, § 3–404, and, further, that the bank failed to establish equitable estoppel.

The Court of Appeals has misread the applicable statute and Code Comment in reaching the result that "good faith" is an element of the defense of ratification. Title 12A O.S.1971, § 3–404, provides:

"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it *or* is precluded from denying it; *but, it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.*

"(2) Any unauthorized signature may be ratified for all purposes of this article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer." [Emphasis added]

---

1. Appellant further testified:
   "Q. The way you left it with Mr. Stewart (bank president) was in your meeting there, your first meeting with him, as I understand your testimony, was that you were going to try and get the money back from John directly?
   "A. Right."

It is of crucial importance in reading Section 3–404 to understand that when Section 3–404(1) discusses ratification and preclusion, it involves the rights of the bank against the person whose name was signed. But, when Section 3–404(1) discusses "good faith", it involves the rights of the bank (if in good faith) against the unauthorized signer.

The Code Comment relied upon by the Court of Appeals further supports this construction of the phrase. Comment 2 states that:

"The final clause of subsection (1) is new. It states the generally accepted rule that the unauthorized *signature*, while it is wholly inoperative as that of the person whose name is signed, *is effective* to impose liability upon the *actual signer* or to transfer any rights that he may have in the instrument. His liability is not in damages for breach of a warranty of his authority, but is full liability on the instrument in the capacity in which he has signed. It is, however, *limited* to parties who take or pay the instrument in *good faith* ; and one who knows that the signature is unauthorized cannot recover from the signer on the instrument." [Emphasis added]

█ It is obvious from the language of the Code Comment that the "final clause of subsection (1)" is not intended to apply to the situation presented in the present case. We therefore conclude that "good faith" is not a necessary element of the defenses of ratification and preclusion created in the first clause of subsection (1) to 12A O.S. 1971, § 3–404. Thus, the Appellee bank was not required to prove that all of its actions were in good faith before it could prevail on the defense of ratification. All that is required of Appellee bank is to prove that the person whose name is signed has ratified the unauthorized signature, and the Appellee bank's good faith or lack of same is irrelevant.

The Court of Appeals further states that Appellee bank, before it can prevail, must not only, under Section 3–404, establish ratification, but must also prove preclusion as well. Section 3–404 states these defenses in the disjunctive, as alternatives; therefore, the fact that Appellee bank has not proven equitable estoppel, as the Court of Appeals observes, has nothing to do with whether Appellant ratified the unauthorized acts of his brother. We conclude that the case before us does not require exploration of the implications of preclusion and that an affirmative resolution of the issue of ratification would be dispositive of the entire case.

Ratification is defined in Section 82 of Restatement of Agency 2d (1958):

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

Ratification requires intent to ratify plus full knowledge of all material facts. 2 Anderson, U.C.C., § 3–404:7, page 924 (2d Ed. 1971). See *Thermo Contracting Corporation v. Bank of New Jersey, 69 N.J. 352, 354 A.2d 291, 296 (1976).* The affirmance necessary to establish ratification may be shown either by conduct evidencing an election to treat an unauthorized act as authorized, or by conduct which can be explained only if there was an election. Restatement (2d) of Agency § 83 (1958). A ratification once effected cannot later be revoked. Restatement (2d) of Agency § 102 (1958). A principal must either ratify the entire transaction or repudiate it entirely, and cannot pick and choose only what is advantageous to him, and the principal may not make ratification conditional upon his suffering no loss. Restatement (2d) of Agency § 77, p. 672–3.

█ Application of the above outlined principles of law to the facts before us makes it clear that the trial court was correct in its ruling that a case of ratification was made out as a matter of law. The acts of Appellant in advising the bank executive not to pursue or take any action against his brother, John Eutsler, and then entering into an agreement with his brother for repayment, when coupled with Appellant's acquiescence by silence toward his brother for

nearly six months and delay for the same period before notifying the bank that he had now elected to hold the bank responsible, amounted to ratification in the sense of 12A O.S.1971, § 3–404. The Appellant knew that John Eutsler committed the unauthorized act of negotiating the checks and also knew that John Eutsler had breached his promise to repay, and that, coupled with his extended silence for such a period of time, ratified John Eutsler's act. *Thermo Contracting Corp. v. Bank of New Jersey, supra; Fulka v. Florida Commercial Bank, Inc., 371 So.2d 521 (Fla.App.1979).*

The *Fulka* and *Thermo* cases are cases from other jurisdictions which have made application of the defense of ratification and Section 3–404 to facts which are similar to the instant fact situation. · In each of these cases, the courts were faced with:

(1) An agent of the payee, who was unauthorized to do so, signed and negotiated an instrument with the bank;

(2) The payee discovered the unauthorized signature;

(3) The payee chose to pursue the agent to recover the proceeds;

(4) The agent did not repay;

(5) The payee waited a substantial period of time before making demand on the bank.

The avowed purpose of the Uniform Commercial Code is "to make uniform the law among the various jurisdictions." 12A O.S. 1971, § 1–102(2)(c). The cases cited by Appellant are factually dissimilar from the case at bar and therefore are distinguishable.

Lastly, the Appellant contends that the issue of ratification was one of disputed facts about which reasonable men might reach different conclusions, and thus summary judgment was not warranted. *Northrip v. Montgomery Ward & Co., 529 P.2d 489 (1974).* We disagree with Appellant's contention and conclude that the only reasonable inference which can be drawn from the facts set out above is that Appellant ratified the actions of his brother, John Eutsler, with respect to the checks in question. Such being the case, the trial court did not err in granting summary judgment

for Appellee bank. Therefore, the decision of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

IRWIN, C. J., and LAVENDER, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

HODGES, J., dissents.