685 P.2d 145

**Joseph D. COOK and Willie Mae Cook, husband and wife, Plaintiffs-Appellees,**

v.

**GREAT WESTERN BANK & TRUST, an Arizona banking corporation; and the Arizona Bank, an Arizona banking corporation, Defendants-Appellants.**

**1 CA–CIV 6939.**

Court of Appeals of Arizona, Division 1, Department D.

June 5, 1984.

---

2. *See* State Bar Committee Note to Rule 12(i).

Karasek & Haddy by David J. Karasek, Phoenix, for plaintiffs-appellees.

Brown & Bain, P.A. by Michael F. Bailey, Phoenix, for defendants-appellants.

## OPINION

HAIRE, Presiding Judge, Division 1.

The issues raised in this appeal are: (1) whether delay by a joint payee in informing the banks that his endorsement on a check was a forgery constitutes ratification or precludes recovery against the banks, (2) whether the banks acted in accordance with reasonable commercial standards in dealing with the check, and (3) whether the measure of damages is the face amount of the check.

Joseph D. Cook commenced this litigation by filing a complaint in Maricopa County Superior Court against Great Western Bank and The Arizona Bank for conversion of a check for $36,000 made payable jointly to American General and Joseph D. Cook. On cross-motions for summary judgment the trial court granted judgment in favor of Cook for the face amount of the check. The banks have appealed.[1]

The pertinent facts giving rise to this lawsuit are as follows. On or about April 25, 1979, Cook loaned $30,000 to Mel E. Haining, a paving subcontractor doing business as American General. In connection with the loan Haining executed an assignment to Cook of $36,000 of the proceeds of a paving subcontract which Haining had entered into with Ray Stevens Paving. This assignment represented repayment of the principal of the loan plus $6,000 interest. Ray Stevens Paving signed an acceptance of the assignment and agreed to pay $36,000 directly to Cook at his home address.

On June 13, 1979, Ray Stevens Paving issued a check drawn on The Arizona Bank in the amount of $36,000 made payable jointly to American General and Cook. The check was delivered to Haining, rather than to Cook as required by the assignment. Haining's bookkeeper deposited the check at Great Western Bank with the purported endorsements of both payees. In the ordinary course of collection, The Arizona Bank paid the check.

Approximately six months later, in January 1980, Cook contacted Ray Stevens Paving and learned that the check had been issued. On November 5, 1980, without giving prior notice to the banks concerning the alleged forgery, Cook filed a complaint against the banks and Haining, claiming that his purported endorsement was a forgery. Haining could not be located for service of process. At the time the com-

---

1. Great Western Bank and The Arizona Bank initially had independent legal representation. The Arizona Bank as the drawee bank filed a cross-complaint against Great Western Bank, the depositary and collecting bank, for any amounts recovered against it by Cook. Judgment was granted in favor of The Arizona Bank on this cross-complaint for breach of warranties as to the validity of the endorsements. See A.R.S. §§ 44-2551 and 44-2616. This judgment has not been appealed. The Arizona Bank subsequently tendered its defense against the Cooks to Great Western Bank.

plaint was filed the banks held no proceeds of the check.

▮ Before addressing the legal issues involved, we must first resolve a substantial disagreement between the parties concerning the facts. At the time the cross-motions for summary judgment were filed, the record before the trial court consisted of the affidavits of Cook and John Fox (the banks' expert witness), and copies of the check and assignment. On appeal the banks and Cook draw contrary inferences from the affidavit of Cook as to when Cook first discovered the forgery. The banks argue that the affidavit indicates that Cook knew of the forgery in January 1980. Cook, however, contends that the affidavit indicates that he did not ascertain that his signature had been forged until June 1980. In resolving this disagreement we note that on appeal from a summary judgment the facts and all inferences therefrom must be taken in a light most favorable to the party opposing the motion. *Wisener v. State*, 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). Viewed in this manner with all reasonable inferences drawn in favor of the banks, the affidavit must be interpreted as showing that Cook knew of the forgery in January 1980.[2] Consequently, we assume for purposes of this appeal that Cook became aware of the forgery in January 1980.

## COOK'S DELAY IN NOTIFYING THE BANKS OF THE FORGERY

The banks argue that Cook's ten month delay in notifying them that his endorsement was forged after he had knowledge of the forgery either constitutes ratification of the forged endorsement or precludes Cook from denying its authenticity. This argument is based upon A.R.S. § 44–2541 (U.C.C. § 3–404) which provides in part:

"A. Any unauthorized signature is wholly inoperative as that of the person

whose name is signed unless he ratifies it or is precluded from denying it.

\*    \*    \*    \*    \*    \*

"D. Any unauthorized signature may be ratified for all purposes of this article."

Our supreme court discussed the meaning of ratification for purposes of this statute in *United Bank of Arizona v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979). Citing with approval a New Jersey Supreme Court decision involving an identical statute, the Arizona Supreme Court stated:

"At the onset we find the statements of the Supreme Court of New Jersey are enlightening. In *Thermo Contracting Corp. v. Bank of New Jersey*, 69 N.J. 352, 354 A.2d 291 (1976), in construing U.C.C. § 3–404, the New Jersey court said:

'The meaning of ratification for purposes of negotiable instruments law is not dissimilar from its general meaning in the law of agency. Ratification is defined in Section 82 of *Restatement of Agency* 2d (1957):

Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.'

" \* \* \* Ratification requires intent to ratify plus full knowledge of all the material facts. Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act, from inaction, or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act."

121 Ariz. at 440, 590 P.2d at 1386 (citations omitted).

The court then held that there had been no ratification under the facts of that case

---

**2.** We further note that in various motions and memoranda filed in the trial court, the banks refer to January 1980 as the date the forgery

was discovered. This stated assumption by the banks was not controverted in the motions and memoranda filed by Cook.

because the payee had been unaware of the forgery during the period of delay.

The banks cite several cases interpreting U.C.C. § 3–404 as adopted in other jurisdictions where a joint payee discovered a forged endorsement, pursued the forger without success and delayed a substantial period of time prior to making a demand against the banks. These delays were held to constitute ratifications of the forgery. *See Fulka v. Florida Commercial Banks, Inc.*, 371 So.2d 521 (Fla.App.1979); *Thermo Contracting Corp. v. Bank of New Jersey*, 69 N.J. 352, 354 A.2d 291 (1976); *Eutsler v. First National Bank*, 639 P.2d 1245 (Okla. 1982). However, Cook argues that these cases are distinguishable from the instant case because facts in addition to mere delay resulted in findings that the payees had affirmed the forgeries. Specifically, Cook argues that: in *Fulka*, the trial court found that the payee's testimony demonstrated that she had no objection to the forger's retention of the funds; in *Thermo*, the payee gave the forger time to "make it up"; and in *Eutsler*, the payee requested that the banks delay in prosecuting the forger.

The banks respond that these are distinctions without legal significance. They argue that the payee's singlemindedness in looking to the forger for extended periods of time and the payee's failure to notify the banks were the essential acts that constituted ratification.

Cook also argues that *Atlas Building Supply Co. v. First Independent Bank of Vancouver*, 15 Wash.App. 367, 550 P.2d 26 (1976) is an analogous case and constitutes strong authority for affirmance of the summary judgment entered in this case. Atlas, as co-payee of a check made payable to it and a forger, first sought relief by attempting to collect from both the forger and the drawer of the check. When the forger went out of business and the drawer experienced some financial difficulties, Atlas then filed an action against the drawee bank. The court found that the defendant

bank was first notified of the forgery over ten months after Atlas had become aware of it and long after Atlas had given up efforts to collect from the forger. The bank appealed from a judgment in favor of Atlas on grounds that Atlas had ratified the forged endorsement and was estopped from pursuing its claim due to the lengthy delay in notifying the bank. The court stated:

"Defendant imputes much significance to plaintiff's delay in apprising the bank of the unauthorized endorsement. The mere passage of time, however, will not necessarily establish ratification. And the fact that Atlas had knowledge of the forgery during this period will not establish ratification unless plaintiff delayed its notification under circumstances which require an inference of election to ratify.

\* \* \* \* \* \*

"Indeed, the fact that plaintiff asserted its 'claim against others is proof it did not abandon its claim for reimbursement and thus did not intend to ratify the unauthorized endorsement.' " [3]

550 P.2d at 28–29 (citations omitted).

The banks point out that *Atlas* was decided after full trial and that the precise holding on appeal was that the trial court's determination that the payee's delay was reasonable under the circumstances was not clearly erroneous. The banks also urge, however, that *Atlas* was wrongly decided on the ratification question and is against the weight of authority.

█ In considering this matter, we first note that with the exception of *Eutsler*, the cases cited by the parties are cases decided after a trial. Whether there has been ratification of a forged signature is usually a question of fact. *Common Wealth Ins. Systems, Inc. v. Kersten*, 40 Cal.App.3d 1014, 1026, 115 Cal.Rptr. 653, 661 (1974); *Johnson v. North Bank*, 99 Ill.App.3d 320, 323, 55 Ill.Dec. 220, 221, 426 N.E.2d 4, 5 (1981); *Orefice v. First Ntl. City Bank*, 37

---

**3.** This latter argument is unpersuasive, since pursuit of the forger and/or the drawer is entirely consistent with the relinquishment of a claim against the bank.

App.Div.2d 830, 325 N.Y.S.2d 281, 282 (1971). *See generally* Annot. 93 A.L.R.3d 967 (1979). In determining whether Cook's actions and inaction constitute an implied ratification, we are asked to review a record which is limited to the following facts: (1) Cook did not inform the banks of the forgery for ten months after he learned of it; (2) Cook took some unspecified action to recover from Haining and Ray Stevens Paving. Based on this record we must determine whether summary judgment in favor of Cook was correct.

■ Viewing the evidence in a light most favorable to the party opposing the motion, we find that ten months is a substantial delay raising an inference of ratification sufficient to warrant that this issue be submitted to the trier of fact. However, although urged to do so by the banks, we are unwilling to find as a matter of law that this delay by itself constitutes a ratification which entitles the banks to judgment in their favor.

We recognize that the banks also seek reversal of summary judgment for Cook and entry of judgment in their favor on grounds that Cook was "precluded" from denying the forgery. *See* A.R.S. § 44–2541. They argue that the same facts which arguably establish ratification also constitute an estoppel. In support of this contention, they cite *Federal Pacific Electric Co. v. First Pennsylvania Bank*, 266 Pa.Super. 471, 405 A.2d 530 (1979), in which the court analyzed a ten-month delay under the "preclusion" language of U.C.C. § 3–404 rather than a ratification theory. The court stated:

"Quite apart from ratification, Federal Pacific is precluded or estopped from asserting a claim against the banks after a delay of ten months in asserting a claim. * * * It made no claim to either bank, but proceeded to work out a settlement of its own without involving the banks. It thereby lost its opportunity of asserting whatever rights it might otherwise have had."

405 A.2d at 534; (citation omitted).

The official comments to U.C.C. § 3–404 acknowledge that the phrase "or is precluded from denying it" is retained in subsection (1) to recognize the possibility of an estoppel against the person whose name is signed. *See* U.C.C. § 3–404, comment (4). *See generally* Anderson, Uniform Commercial Code, 2d Ed. § 3–404:1 *et seq.* (1971).

■ Although we recognize that in *Federal Pacific Electric Co.* estoppel was found as a matter of law on the basis of a ten-month delay, we are again unwilling to determine this issue on the basis of the meager record presented to the trial court. Estoppel like ratification for purposes of U.C.C. § 3–404 is generally a question of fact. *Common Wealth Ins. Systems, Inc. v. Kersten, supra.*

■ The affidavit of John Fox, a Vice-President of Great Western Bank, asserts that had the bank been informed of the alleged forgery in early 1980, it "could have pursued any funds on deposit in the Haining account at Valley National Bank, and probably could have obtained a current address for Haining in order to serve any necessary legal documents upon him." This statement offers speculation concerning the bank's ability to pursue the forger. Furthermore, it does not offer any specifics as to the amount in the Valley National Bank account and the dates of its availability. Generally, the appropriate test of estoppel is that: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Beacom v. Equal Employment Opportunity Commission*, 500 F.Supp. 428, 435 (D.C.Ariz.1980); *United States v. Georgia Pacific*, 421 F.2d 92, 96 (9th Cir.1970). The affidavits demonstrate that Cook knew of the forgery and that the bank might have been able to recover from Haining but for Cook's delay. They are not determinative of Cook's intent, the banks' right to rely and whether reliance caused the banks' injury. The

record does raise factual issues with respect to these elements of estoppel.

■ Additionally, we note that estoppel is not applicable where the one asserting the doctrine is guilty of misconduct toward the person against whom he seeks to have estoppel applied. If the banks failed to act with due care when they cashed the joint payee check over Cook's forged endorsement, they could not assert estoppel against Cook. *See United Bank of Arizona v. Mesa ·N.O. Nelson Co.*, 121 Ariz. at 442, 590 P.2d at 1388. As discussed subsequently in this opinion, there are factual issues raised with respect to the commercial reasonableness of the banks' action in cashing the forged check. This, like the other factual issues previously raised, precludes the entry of summary judgment for either Cook or the banks on the issue of estoppel.

## DELIVERY OF THE CHECK

The banks next argue that Cook ratified delivery of the check to Haining and thereby also ratified Haining's forgery. We disagree. Haining had assigned his rights to $36,000 pursuant to a contract with Ray Stevens Paving to Cook. Ray Stevens Paving had signed an acceptance of the assignment and agreed to pay this amount directly to Cook. After he learned that the check had been delivered to Haining, Cook did not look to Ray Stevens Paving to recover the $36,000 on grounds of breach of the assignment acceptance. Rather, he sought recovery from Haining and the banks.

■ The banks correctly point out that in the absence of a valid delivery, a payee has no conversion claim against a bank for payment of a check on a forged endorsement. *See* A.R.S. § 44–2536. *See also City National Bank of Miami v. Wernick*, 368 So.2d 934, 936 (Fla.App.1979); *Winn v. First Bank of Irvington*, 581 S.W.2d 21, 23–24 (Ky.App.1978).

■ Delivery may be actual or constructive and delivery to one joint payee may be deemed constructive delivery to all payees.

Such constructive delivery has been upheld on several theories. One court held in a pre-code decision that by suing a collecting bank, the aggrieved payee has affirmed or ratified the wrongdoing payee's receipt of the check. *Kaufman v. State Savings Bank*, 151 Mich. 65, 114 N.W. 863 (1908). Another view is that because it is usually physically impossible for two or more joint payees to possess the check at the same time, the delivery to one gives him possession which he holds for himself and the others. *See Hoffman v. First National Bank of Chicago*, 299 Ill.App. 290, 20 N.E.2d 121 (1939); *House-Evans Co. v. Mattoon Transfer and Storage Co.*, 275 P.2d 268 (Okl.1954). Another court has held that by bringing suit against a collecting bank the aggrieved payee has ratified the receipt of the check by the bank for the forger, and the payee may charge this bank with having received it as an agent for the use and benefit of the aggrieved payee. *Indiana Plumbing Supply Co. v. Bank of America Nat'l Trust and Sav. Ass'n*, 255 Cal.App.2d 910, 63 Cal.Rptr. 658 (1968). *See generally Murray, Daniel E.*, "Joint Payee Checks-Forged and Missing Endorsements," 78 Comm.L.J. 393, 407 (1973).

■ Even assuming that Cook can assert delivery of the check only through Haining on the basis of agency, it does not follow that Cook also necessarily ratified the forgery. The banks argue that Cook had to ratify both the forgery and the delivery citing authority to the general proposition that a principal must either ratify the entire transaction or repudiate it entirely. *See e.g., Valley National Bank v. Salt River Valley Water Users Ass'n*, 54 Ariz. 199, 207, 94 P.2d 647, 650 (1939); *Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App.1981); *Thermo Contracting Corp.*, 69 N.J. at 362, 354 A.2d at 296. However, we do not find that the delivery and forgery are the same transaction for purposes of ratification. It is not inconsistent that Cook would recognize Haining's authority to receive the check as joint payee and

dispute the forgery. To the contrary, it is reasonable to assume that Cook would not have objected to Haining's receipt of the check and endorsement on his own behalf followed by Cook's endorsement and receipt of the check proceeds.

As previously discussed, there are factual issues raised concerning the alleged ratification of the forgery by Cook. However, we find no support for the banks' contention that ratification of the delivery of the check to Haining in itself constitutes ratification of the forgery.

For the above reasons, we find that on the record before us summary judgment in favor of either party on the issue of ratification and estoppel would be improper.

## REASONABLE COMMERCIAL BANKING STANDARDS

The banks' next major argument is that summary judgment should have been entered in their favor because the check was paid in accordance with reasonable commercial standards applicable to banks in Arizona. This argument is based on A.R.S. § 44–2556 (U.C.C. § 3–419) which provides in part:

"An instrument is converted when:
\*  \*  \*  \*  \*  \*

"3. It is paid on a forged endorsement . . . ."

"C. Subject to the provisions of this chapter concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

The banks argue that the following uncontroverted affidavit of an expert witness established that the banks acted in good faith and in accordance with reasonable commercial standards and no longer had any proceeds of the check in their hands at the time this litigation was instituted. John Fox, the affiant, was a branch manager and vice president of Great Western Bank. After testimony as to his expertise in the area, his affidavit contains the following statements:

"4. I have examined the regularly kept records of Great Western and familiarized myself with the details regarding acceptance on June 15, 1979 by Great Western for deposit of the check (the 'Check') which is the subject of this action. At that time, Mel E. Haining, dba American General Contractor, a joint payee and endorser of the check, was an established customer of Great Western's Prescott Branch. A number of large checks had previously been deposited in his account and had cleared with no trouble.

"5. Deposit of the Check was made by a bookkeeper who was well known to the employees of Great Western's Prescott Branch, and whose sister was at the time employed by Great Western in a responsible capacity.

"6. In view of the foregoing facts, and based upon my experience with the reasonable commercial standards followed by banks in Arizona, acceptance for deposit of the Check without verification of the joint payee Cook's signature was in accordance with the reasonable commercial standards of Arizona banking institutions."

We first note that this affidavit addresses only the actions of Great Western Bank relating to the issue of commercial reasonableness. The parties have not addressed, and we do not decide, whether The Arizona Bank as the drawee bank could assert a defense pursuant to A.R.S. § 44–2556. That statute provides the defense of commercial reasonableness to "a representative, including a depositary or collecting bank" and does not mention a "drawee" bank. In fact there is some question as to whether the defense is even available to a depositary/collecting bank for the negotiation of a forged check. The question of

whether this defense is indeed available to limit the depositary/collecting bank's liability for conversion has not been decided in this state and the issue is not before us for decision now. We mention it because, upon remand, it is an issue that may require resolution by the trial court. Based upon the issues presented in this appeal we are simply required to determine whether, assuming the availability of the defenses set forth in A.R.S. § 44–2556, the Fox affidavit, in the absence of controverting affidavits, precluded the granting of summary judgment to Cook on this issue. Alternatively, if we find that the affidavit precluded summary judgment for Cook, we must then determine whether summary judgment should have been entered for Great Western Bank on this issue. We find the affidavit insufficient to support summary judgment for either party.

What constitutes reasonable commercial standards must be decided in the context of specific facts. *Continental Bank v. Wa-Ho Trucking Brokerage*, 122 Ariz. 414, 420, 595 P.2d 206, 212 (1979). A determination of commercial reasonableness is generally a fact question inappropriate for determination on a motion for summary judgment. *See Nat'l Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga.App. 240, 248 S.E.2d 496 (1978); *Parsons Travel v. Hoag*, 18 Wash.App. 588, 570 P.2d 445 (1977). The Fox affidavit states uncontroverted facts concerning Great Western Bank's handling of the check, and in the absence of controverting affidavits these facts are presumed to be true. *Portonova v. Wilkinson*, 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981). However, Great Western Bank also relies upon that portion of the affidavit in which Mr. Fox concluded that these actions comported with "reasonable commercial standards."

An expert may testify as to the ultimate fact. *See* Rule 704, Arizona Rules of Evidence; *Continental Bank v. Wa-Ho Trucking Brokerage*, 122 Ariz. at 418, 595 P.2d at 210. However, whether Great Western Bank's actions were commercially reasonable is both a factual and a legal

determination. Upon this record the trial court was not bound by the opinion of an expert witness with respect to the conclusion that Great Western Bank's actions were commercially reasonable. *See Banker v. Leight*, 91 Ariz. 112, 119, 370 P.2d 268, 273 (1962).

Cook argues that Great Western Bank's failure to authenticate a signature of a non-customer payee as a matter of law precludes a defendant from raising the affirmative defense of commercial reasonableness. In support of this proposition he cites to a footnote in *Ickes v. Bache Halsey Stuart Shields, Inc.*, 133 Ariz. 300, 650 P.2d 1282 (App.1982). This footnote indicates that some courts have found as a matter of law that a bank's failure to authenticate a payee's signature is not commercially reasonable. We first note that the footnote was not part of the court's holding as the case did not deal with the liability of a bank. Further, we note that the cases referred to in the footnote with one exception were decisions made following a full trial, involved typed endorsements suspect on their face, or involved payee endorsements for deposit in third party accounts. They did not involve joint payee situations in which the endorsements appeared proper and one of the joint payees was a customer of the bank, making a deposit to his own account.

In summary on this issue, we are not prepared to conclude that as a matter of law, either the banks or Cook were entitled to summary judgment under the record presented. This issue should be resolved after further development of the record in a full evidentiary hearing.

## DAMAGES

The banks' final argument on appeal involves the amount of damages included in the judgment. Since we are reversing summary judgment as to liability, the award of damages is likewise reversed. Consequently, we do not decide whether A.R.S. § 44–2556(B) precludes the Arizona Bank from claiming that damages are less than the face amount of the check.

The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

KLEINSCHMIDT and OGG, JJ., concur.