**John S. POLLES, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION in its Capacity as the Receiver of First Republic Bank of Dallas, N.A. (Formerly Interfirst Bank of Dallas, N.A.) and Deposit Guaranty National Bank and Great American First Savings Bank, Defendants.**

**No. DC88–146–S–D.**

United States District Court,
N.D. Mississippi,
Delta Division.

Oct. 9, 1990.

Ralph Chapman, Dana J. Swann, Chapman & Heaton, Clarksdale, Miss., for plaintiff.

Robert P. Thompson, Copeland, Cook, Taylor & Bush, Jackson, Miss., for defendant Great American First Sav. Bank.

William H. Cox, Jr., Watkins & Eager, Jackson, Miss., for defendant Deposit Guar. Nat. Bank.

Patricia A. Hancock, Hancock & Houston, Jackson, Miss., for defendant FDIC.

## OPINION

SENTER, Chief Judge.

This nonjury case, which involves allegations that defendant Great American First Savings Bank paid a $40,000 check on an unauthorized signature, is presently before the court on defendants' motions for summary judgment.[1] Defendants contend that through a course of conduct plaintiff ratified the endorsement on the check in question, thus precluding any action against them for an unauthorized endorsement.

## FACTS

In October, 1983, plaintiff, Dr. John S. Polles, cashed two $20,000 certificates of deposit which were on deposit with defendant Deposit Guaranty National Bank. He then mailed a $40,000 bank check (drawn on First National Bank of Dallas, a/k/a Interfirst Bank of Dallas) made payable to "John S. Polles" to his wife in California.[2] Plaintiff did not endorse the check or write any restrictions on it before mailing it; however, there is no question that Dr. Polles intended the check to be negotiated: "I sent the money out there to [my wife] with [the] understanding that we put it in an account with my name on it." The check was subsequently endorsed by either plaintiff's wife or his brother-in-law and delivered by one of them to defendant Great American Savings Bank; the proceeds of the check were then used in a restaurant business, Jimmy's Family of Fine Restaurants, in which plaintiff had previously made an investment of $75,000.[3]

Plaintiff's deposition testimony indicates that once the check was mailed and received by Mrs. Polles,[4] Dr. Polles's primary concern was whether interest was being drawn on the $40,000, not with where Mrs. Polles had deposited the check. In fact, he "neglected" to ask to see the deposit slip:

I trusted [my wife] because ... we was out there together do or die ... and I just trusted her.

\* \* \* \* \* \*

[W]e was going to go into those restaurants and make a living. We was just out there to make a living and cooperate in every way possible....

After joining his wife in California, plaintiff began working in one of the restaurants as a manager, for which he received a monthly salary of $500. In early 1985, plaintiff made another investment of $45,500 in Jimmy's Family of Fine Restaurants. Then, beginning in April, 1985, Dr. and Mrs. Polles began to receive payments from the restaurant as a return on plaintiff's investments. These payments, which were in addition to plaintiff's salary, totalled $16,500. In December, 1985, Jimmy's Family of Fine Restaurants filed for bankruptcy.

On May 7, 1986, some two and one half years after the check in question was paid, plaintiff filed an affidavit of forgery claiming that the endorsement on the $40,000 check was unauthorized and that the banks were responsible. In February, 1987, the Polleses were divorced, and in March, 1987, plaintiff filed suit in the Circuit Court of Coahoma County, Mississippi. The case was subsequently removed to this court when the FDIC became a party in interest.

In opposition to the summary judgment motion, plaintiff submitted his affidavit in which he states that his wife and brother-in-law "kept the details of the unauthorized signature from me." He contends that at some unspecified point in time he learned from a third party that the check in question had been used in the restaurant and

---

1. Great American filed the initial motion in which the other defendants subsequently joined.

2. In early 1983, Dr. Polles's wife and children moved to San Diego; Dr. Polles, who had retired his dental practice, joined them in January, 1984. The Polles family moved in with plaintiff's brother-in-law (Mrs. Polles's brother), Peter Theodore.

3. In return for this investment, plaintiff was to get 10 per cent of the stock of Jimmy's Family of Fine Restaurants once the business was incorporated. The business was in fact never incorporated.

4. The check in question was mailed to Mrs. Polles at the restaurant's post office box number.

had not been deposited in an account in his name as he had directed his wife. He maintains that "[a]fter this discovery, I confronted both my brother-in-law and my former wife concerning the whereabouts of this Certificate of Deposit,[5] however they evaded the question and denied any knowledge of it." He declares that "[a]t all times prior to the signing of the affidavit [of forgery] on May 7, 1986, I either did not know of the forgery of my signature, or I was trying to get my money back." Plaintiff denies that he intended to ratify the alleged forgery.

## DISCUSSION

Defendants base their motions for summary judgment on section 75–3–404 of the Mississippi Code, which states:

(1) Any unauthorized signature [6] is wholly inoperative as that of the person whose name is signed *unless he ratifies it or is precluded from denying it;* but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

(2) *Any unauthorized signature may be ratified for all purposes of this chapter.* Such ratification does not of itself affect any rights of the person ratifying against the actual signer.

Miss.Code Ann. § 75–3–404 (emphasis added). In response, plaintiff's argument is twofold. First, plaintiff maintains that the question of ratification is not properly before the court for its consideration. Plaintiff contends that defendants have waived the right to allege ratification since they failed affirmatively to plead ratification as a defense as required by Rule 8(c) of the Federal Rules of Civil Procedure. Alternatively, plaintiff argues that even if the ratification question is properly before the court, whether ratification has occurred in the instant case is a question of fact which precludes the summary disposition of this cause.

## I.

The first question which must be addressed is whether the question of ratification is properly before the court. Rule 8(c) requires that any affirmative defense be set forth in the answer and lists examples of defenses which must be affirmatively pled. Fed.R.Civ.P. 8(c). Ratification is not specifically listed in the rule; however, defendants acknowledge that the list of affirmative defenses in 8(c) is not exhaustive.

■ Assuming arguendo that ratification is an affirmative defense which must be pled,[7] the question becomes whether defendants waived ratification as a defense, for "[w]hen the defendant has waived his affirmative defense by failing to allege it in his answer, or have it included in a pre-trial order ... that supersedes the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment." *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976). If, however, an affirmative defense "is raised in the trial court in a

---

5. Dr. Polles uses the term "Certificate of Deposit" throughout this affidavit, but it is now well established that it was not a C.D. that was allegedly endorsed without authorization but was instead a bank check issued after plaintiff cashed two C.D.'s.

6. An "unauthorized signature" is defined as "one made without actual, implied or apparent authority and includes a forgery." Miss.Code Ann. § 75–1–201(43).

7. The Fifth Circuit has held that state law controls the resolution of whether a particular matter constitutes an affirmative defense. *Seal v. Industrial Electric, Inc.,* 362 F.2d 788, 789 (5th Cir.1966). There are very few Mississippi cases discussing the issue of ratification, and none which decide whether ratification must be af-

firmatively pled. *See, e.g., Dobbs–Maynard Co. v. Jumper,* 388 So.2d 879, 883 (Miss.1980) (where plaintiff did not plead ratification in its declaration or in its answer to defendant's affirmative defenses, and jury was not instructed on issue of ratification, ratification question was not properly before supreme court on appeal). However, at least one treatise does list ratification as a defense which is generally treated as an affirmative defense. *See* 2A J. Moore and J. Lucas, *Moore's Federal Practice* para. 8.27[4] n. 3 (2d ed. 1990). *See also Mutual Creamery Insurance Co. v. Iowa National Mutual Insurance Co.,* 427 F.2d 504 (8th Cir.1970) (court indicated that ratification is Rule 8(c) affirmative defense).

manner that does not result in unfair surprise ... technical failure to comply with Rule 8(c) is not fatal." *Allied Chemical Corp. v. Mackay,* 695 F.2d 854, 855–56 (5th Cir.1983). Thus, although an affirmative defense is not raised in the answer, it is not waived where the defense is raised in a summary judgment motion and is included in the pretrial order, and the plaintiff is not prejudiced in his ability to respond. *Id.* at 856.

In the answer to plaintiff's complaint, defendants specifically pled as affirmative defenses the following: statute of limitations, estoppel, waiver, and laches. Defendants first presented the issue of ratification in late January and early February, 1990, via their motions for summary judgment. Furthermore, the pretrial order, which was entered on September 11, 1990, expressly states, "The pleadings are amended to conform with this pretrial order." In this order, defendants specifically invoked the defense of ratification in their summary of the ultimate facts. Plaintiff offered no objections to this inclusion.

Plaintiff argues that "[a]fter having completed discovery ... it is patently unfair to now require the Plaintiff to address an affirmative defense for the first time on motion for summary judgment shortly before trial." In response, defendants maintain that all of the facts supporting the summary judgment motions were known to the plaintiff and his attorney at the time of Dr. Polles's and his brother-in-law's depositions. Defendants insist: "The denial of Plaintiff's allegation of a forged endorsement is sufficient to put ratification in issue.... The Plaintiff has been on notice that ... the Banks consider the endorsement on the check as the Plaintiff's ... whether by ratification, acquiescence or whatever."

■ The court is of the opinion that, even though the time for discovery has passed, plaintiff will not be prejudiced by the court's consideration of the ratification question. Early in this litigation, plaintiff was apprised of defendants' contention that the signature on the check was not a forgery and that the defendants considered the signature to be plaintiff's, whether by estoppel, waiver, "ratification, acquiescence or whatever." Further, the ratification question was expressly included in the summary judgment motions, to which plaintiff had the opportunity to respond,[8] and in the pretrial order, which, under Rule 16(e), "shall control the subsequent course of the action...." Fed.R.Civ.P. 16(e). Consequently, the court finds the question presented by defendants' motions for summary judgment to be properly before the court for its consideration.

## II.

Having concluded that the issue of ratification may be considered, the next question which the court must address is whether defendants have established ratification as a matter of law, thus warranting the entry of summary judgment. The Mississippi Supreme Court has decided no cases interpreting or applying section 75–3–404; consequently, this court must look to other jurisdictions which have interpreted 3–404 for guidance.[9] Unfortunately, there is no common thread among these cases as to how this issue should be treated on summary judgment.

■ The term "ratification" is not defined in the UCC; however, courts have almost uniformly looked to the law of agency when interpreting 3–404, for "[t]he meaning of ratification for purposes of negotiable instruments law is not dissimilar from its general meaning in the law of agency." *Thermo Contracting Corp. v. Bank of New Jersey,* 69 N.J. 352, 354 A.2d 291, 295 (1976). Consequently, ratification is explained as

one's affirmance of a prior unauthorized act, done or purportedly done on his account but not originally binding on him,

---

8. When the nonmoving party "cannot ... present by affidavit facts essential to justify the party's opposition," he may make a Rule 56(f) motion. *See* Fed.R.Civ.P. 56(f).

9. Like other legislatures which have adopted the Uniform Commercial Code, the Mississippi legislature, in enacting section 75–3–404, adopted section 3–404 of the UCC verbatim.

and which is later given effect as to some or all persons as if originally authorized. The affirmance necessary to establish a ratification may be shown either by conduct evidencing an election to treat an unauthorized act as authorized, or by conduct which can be explained only if there was an election.

*Atlas Building Supply Co. v. First Independent Bank,* 15 Wash.App. 367, 550 P.2d 26, 28 (1976) (citations omitted). Further, [r]atification requires intent to ratify plus full knowledge of all the material facts. Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act; from inaction; or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act.

*Thermo Contracting,* 354 A.2d at 296 (citations omitted). "[A] person may ratify his unauthorized signature if he knowingly assents to it by express statement or conduct (such as retaining benefits accruing from the signature), and he may be precluded from denying it not only by estoppel but also by negligence in permitting or failing to disavow it." *European American Bank & Trust Co. v. Starcrete International Ind., Inc.,* 613 F.2d 564, 566–67 (5th Cir.1980). *See also* U.C.C. § 3–404 comment 3 (1988) (ratification "may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature ..."). Moreover, "[a]cquiescence or silence may also constitute ratification." *Common Wealth Insurance Systems, Inc. v. Kersten,* 40 Cal. App.3d 1014, 115 Cal.Rptr 653, 661 (1974).

■ The mere passage of time will not necessarily establish ratification. *Atlas Building,* 550 P.2d at 28. Neither will the fact that the plaintiff may have known of the unauthorized signature during the time period before informing the bank "unless plaintiff delayed its notification under circumstances which require an inference of election to ratify." *Id.* at 28. However, a plaintiff's delay in notifying a bank after discovering an unauthorized endorsement does "rais[e] an inference of rat-

ification...." *Cook v. Great Western Bank & Trust,* 141 Ariz. 80, 685 P.2d 145, 150 (Ariz.Ct.App.1984).

Whether there has been a ratification of an unauthorized signature is usually a question of fact, *Cook,* 685 P.2d at 149; however, some courts have found ratification established as a matter of law. For example, in *Eutsler v. First National Bank,* 639 P.2d 1245, (Okla.1982), the Oklahoma Supreme Court found ratification had been established as a matter of law and granted summary judgment based on the following facts: the plaintiff advised the bank not to take action against his brother who had forged endorsements on certified checks and received proceeds; he then entered into an agreement with his brother for repayment and for six months acquiesced by silence and delayed notifying the bank of his intention to hold it responsible. *Eutsler,* 639 P.2d at 1247–48. The court rejected the plaintiff's argument that summary judgment was inappropriate and stated,

[T]he Appellant contends that the issue of ratification was one of disputed facts about which reasonable men might reach different conclusions, and thus summary judgment was not warranted. We disagree ... and conclude that the only reasonable inference which can be drawn from the facts ... is that Appellant ratified the actions of his brother.... Such being the case, the trial court did not err in granting summary judgment for Appellee bank.

*Id.* at 1248 (citation omitted).

Likewise, in *Thermo Contracting,* the New Jersey Supreme Court affirmed summary judgment, finding ratification had been established as a matter of law. *Thermo Contracting,* 354 A.2d at 297. In *Thermo Contracting,* checks were issued to the general contractor, Thermo. *Id.* at 293. A subcontractor, rather than Thermo, picked up the checks, and then forged Thermo's endorsement and deposited the proceeds in his own account. *Id.* at 294. Shortly thereafter, Thermo learned of the forgeries and confronted the subcontractor who promised to return the money, but it

did not notify the banks of the unauthorized endorsements. *Id.* Thermo did not pursue the subcontractor further because it needed the sub's continued cooperation on several government projects on which they were working together. *Id.* Only when the sub refused to complete one of these projects did Thermo institute an action against the banks approximately six months after first discovering the forgeries. *Id.* In upholding the lower court's summary disposition of the case, the supreme court explained:

> Thermo strenuously argues that the issue of ratification here was one of fact, triable by a jury, and not so clearly beyond reasonable dispute as to warrant entry of summary judgment. We do not agree. There was no *genuine* issue of underlying fact here, even recognizing, as we do, that ordinarily conclusory facts as well as underlying operative facts, if reasonably disputable, should be tried rather than determined by summary judgment or by judgment as a matter of law. Here we find no genuine issue of material fact relevant to the issue of ratification which could warrant withholding summary judgment.

> There are undisputed facts in this record which would compel a reasonable fact-finder to conclude that Thermo ratified the actions of [the sub] with respect to the checks in question. Thermo has not suggested any possible evidence it might expect to be adduced at a trial which could affect the conclusive legal significance we have determined attaches to the proofs of record. Summary judgment was therefore properly entered against Thermo.

*Id.* at 297 (emphasis in original).

Finally, in *Fulka v. Florida Commercial Banks, Inc.*, 371 So.2d 521 (Fla.Dist.Ct. App.1979), the appellate court affirmed the trial court's decision to grant the bank's motion for involuntary dismissal on the ground of ratification. *Fulka*, 371 So.2d at 522. In *Fulka*, the plaintiff, because she was to be out-of-town, instructed her broker to send two checks made payable to her directly to a Mr. Okum. *Id.* Plaintiff intended to invest these funds in a carpet company which Okum purportedly owned. *Id.* Plaintiff instructed Okum that he was authorized only to deposit the checks in her account, but upon receiving the checks, Okum endorsed them with plaintiff's name and deposited the money in his own account. *Id.* at 522–23. When plaintiff returned from her trip, Okum told her what he had done; plaintiff did not object. *Id.* at 523. Only when Okum disappeared with the money several months later did she pursue the bank for conversion. *Id.* Placing primary reliance on *Thermo Contracting*, the Florida court found that plaintiff, by her conduct, had, as a matter of law, ratified the alleged forgeries. *Id.* at 523–24. *See also Kersten*, 115 Cal.Rptr. at 661 (ratification found based on acquiescence, although not as matter of law, where plaintiff, after discovering forgery of his name on corporate note, benefitted financially from corporation by drawing salary and repaying to himself loan previously made to corporation and repudiated his signature only after corporation became hopelessly insolvent). *But see Cook*, 685 P.2d at 150 (court refused to find ratification as matter of law where record was limited to facts that plaintiff failed to notify bank of forgery until ten months after discovery and then took unspecified action to recover from alleged forgers).

As this is a nonjury case, this court arguably has greater leeway in drawing inferences from the facts adduced here on the present motions than it generally would in a case set for a jury trial. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273–74 n. 15 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987); *Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 609–10 (5th Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980). However, there remain unanswered a few genuine questions of fact, thus making the summary disposition of this case inappropriate at this time.

■ Defendants have sought summary judgment on the sole issue of ratification, and this opinion is limited to that question. To establish ratification, defendants must

prove not only plaintiff's intent to ratify but also his "full knowledge of all the material facts." *Thermo Contracting,* 354 A.2d at 296. In each of the cases in which a court found ratification established as a matter of law, the record very clearly reveals when the plaintiff learned of the unauthorized signature, not just when he notified the bank, and describes what actions the plaintiff took once he made the discovery. (*See supra* pages 140–141 of this opinion.) Although it is undisputed in the instant case that plaintiff waited two and one-half years between the time the check was issued and the affidavit of forgery was filed, the defendants have not established when plaintiff first learned of the allegedly unauthorized signature or what specific actions he took to recover the funds from his ex-wife and brother-in-law once he learned of the allegedly unauthorized signature. Plaintiff acknowledges that at some point in time before filing the affidavit of forgery, he learned of the purported "forgery" and confronted Mrs. Polles and her brother. But neither he nor defendants specify at *what* point in time these actions transpired. The court finds these missing pieces of information to be crucial to a finding of ratification as a matter of law. Consequently, as there exists a genuine issue of material fact, defendants' motions for summary judgment are denied but without prejudice to their right to supplement the motions with additional evidentiary materials.

An appropriate order shall be issued.

### ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This cause is before the court on defendants' motions for summary judgment. Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That the motions for summary judgment are not well taken and are denied without prejudice to the defendants' right to supplement their motions to correct the evidentiary deficiency noted in the opinion and that discovery is reopened only for this limited purpose;

That defendants shall supplement their motion within sixty (60) days of the date of this order;

That plaintiff will be allowed to respond to any supplementary materials filed by defendants within thirty (30) days of the supplementation.

SO ORDERED.